UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRUCE SMITH, PAUL JOSEPH, JOHN M. JOHNSON, ROBERT TINKER, MARTIN JOSEPH, KIM GADDY, BRIAN KEITH LATSON, MARWAN MOSS, LEIGHTON FACEY, and LATEISHA ADAMS, | * * * * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 12-10291-JLT |
| CITY OF BOSTON, | * * | |
| Defendant. | * | |

MEMORANDUM

July 24, 2013

TAURO, J.

I.   Introduction

Plaintiffs Bruce Smith, Paul M. Joseph, John M. Johnson, Robert Tinker, Martin Joseph, Kim Gaddy, Brian Keith Latson, Marwan Moss, Leighton Facey, and LaTeisha Adams (collectively "Plaintiffs") challenge the Boston Police Lieutenants' promotional exam as unlawful under Title VII of the Civil Rights Act of 1964 and Mass. Gen. Laws ch. 151B. They claim that the exam has a severe disparate impact on minority test takers. Before the court is Defendant City of Boston's Partial Motion to Dismiss [#15]. For the reasons below, this motion is ALLOWED IN PART and DENIED IN PART. The claims of Plaintiffs Johnson and Tinker are DISMISSED WITHOUT PREJUDICE for failure to exhaust their administrative remedies.

II.   Factual Background[1]

Plaintiffs, African American police sergeants for the Boston Police Department ("BPD"), each sought promotion to the position of Lieutenant. To be eligible for promotion, interested candidates must achieve a passing score of at least seventy out of one hundred on the Boston Police Lieutenants' promotions exam ("Exam"), a written multiple-choice test consisting of approximately one hundred questions. A candidate's final score combines the Exam results with any points added or subtracted for years of service and educational background but does not include adjustments for other types of relevant experience, such as military service. The BPD uses the final score to rank candidates in descending score order and makes promotions in strict rank order based on the list.[2]

The BPD administered an Exam in 2005 and certified the promotions list in early 2006. It continued to make promotions from that list until early 2009.[3] Plaintiffs Paul Joseph, Johnson, and Tinker took the 2005 Exam. Each received a passing score: Paul Joseph, 70; Johnson, 86; and Tinker, 86.[4] The BPD did not promote Plaintiffs, and Plaintiffs allege that the BPD promoted only one African-American based on the 2005 Exam results.[5]

The BPD administered the Exam again in 2008 and certified the promotions list in early

---

[1] The court draws the facts from Plaintiffs' Second Amended Complaint [#14] [hereinafter Compl.] and presents them in the light most favorable to Plaintiffs.

[2] Compl. ¶¶ 21-24.

[3] Compl. ¶ 27.

[4] Compl. ¶¶ 4-6.

[5] Compl. ¶ 27.

2009. It continued to promote from this list through the time of this complaint in September 2012.[6] Plaintiffs Smith, Paul Joseph, Martin Joseph, Gaddy, Latson, Moss, Facey, and Adams took the 2008 Exam. Each received a passing score: Smith, 78; Paul Joseph, 87; Martin Joseph, 77; Gaddy, 80s; Latson, 76; Moss, 87; Facey, 88; and Adams 84.[7] The BPD did not promote Plaintiffs, and Plaintiffs allege that the BPD has not promoted any minority candidates from this list.[8]

According to Plaintiffs, the BPD has used multiple-choice promotions exams for the last twenty-five years, even though it knows that these rote memory examinations have a disparate impact on minority test takers. Use of the exams has created a disparate distribution of African-Americans within the BPD ranks. Although minority police officers comprise more than thirty percent of the entire BPD, African-American lieutenants make up less than five percent of all BPD lieutenants (two out of almost fifty). As of March 2012, the BPD had no minority police captains.[9] Plaintiffs hold the promotions exams responsible and assert that the exams fail to accurately predict candidates' actual abilities.

Plaintiffs bring two counts, one for violation of Title VII of the Civil Rights Act of 1964 and one for violation of Mass. Gen. Laws ch. 151B. Each Plaintiff filed an administrative complaint with the Massachusetts Commission Against Discrimination ("MCAD") and Equal Employment Opportunities Commission ("EEOC") and received a right-to-sue letter.

---

[6] Compl. ¶ 28.

[7] Compl. ¶¶ 3-4, 7-12.

[8] Compl. ¶ 28.

[9] Compl. ¶¶ 25-26.

III.  Discussion

    A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include factual allegations that demonstrate a plausible claim for relief.[10] The "court must 'take all factual allegations as true and draw all reasonable inferences in favor of the plaintiff.' "[11] Nevertheless, the court need not accept the plaintiff's legal conclusions, and the plaintiff must provide more than "labels and conclusions or a formulaic recitation of the elements of a cause of action."[12]

    B.  The City's Partial Motion to Dismiss

        i.  The City's Argument

The City of Boston ("City") moves to dismiss the claims of Plaintiffs John Johnson, Robert Tinker, Leighton Facey, and LaTeisha Adams, arguing that these four Plaintiffs failed to properly exhaust their administrative remedies. According to the City, Plaintiffs failed to file timely administrative complaints. The City asserts that Plaintiffs had to file their complaints within three hundred days of the administration of the Exams. Because they failed to do so, even though they filed within three hundred days of the use of the Exams in promotions decisions, the City argues that Plaintiffs' claims must be dismissed.

Additionally, the City argues that the judicial complaints of Johnson and Tinker exceed the scope of their underlying administrative filings and must be dismissed. The administrative

---

[10] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-58 (2007).

[11] Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007) (emphasis omitted)).

[12] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).

complaints raise a disparate treatment theory of discrimination. Because the administrative complaints raised a disparate treatment, rather than disparate impact, theory, the City argues, Johnson and Tinker failed to exhaust their administrative remedies with respect to their disparate impact claim.

        ii.        Timeliness of Plaintiffs' Administrative Complaints

The Supreme Court considered whether use of a written hiring exam could form the basis of a disparate impact claim in Lewis v. City of Chicago.[13] In that case, the Court allowed plaintiffs to challenge the *use* of the written hiring exam in subsequent hiring decisions, even though they could not challenge the *administration* of the exam itself because they had failed to file an administrative complaint within three hundred days of the administration of the exam.[14] The Court reasoned that each use of the exam in hiring decisions constituted a separate, actionable use of an allegedly discriminatory employment practice and started a new statute of limitations clock.[15] This analysis governs the outcome here. Because Plaintiffs filed their administrative complaints within three hundred days of the use of the Exams in promotions decisions, Plaintiffs may challenge those uses even though they cannot challenge directly the administration of the Exam.[16]

---

[13] 560 U.S. 205, 130 S. Ct. 2191 (2010).

[14] Id. at 2198.

[15] Id. at 2198-99 ("It may be true that the City's January 1996 decision to adopt the cutoff score (and to create a list of the applicants above it) gave rise to a freestanding disparate-impact claim. . . . But it does not follow that no new violation occurred–and no new claims could arise–when the City implemented that decision down the road." (citations omitted)).

[16] See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("The existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an

      iii.    Scope of Plaintiffs' Administrative Complaints

"A Title VII suit may extend as far as, but not beyond, the parameters of the underlying administrative charge."[17] Although the judicial complaint must bear a close relation to the administrative charge,[18] it need not track the language of the charge exactly. Rather, the complaint may encompass the scope of the administrative investigation that would reasonably be expected to grow out of the charge, regardless of whether the agency actually conducts an investigation.[19] In other words, a court may "look beyond the four corners of the underlying administrative charge to consider collateral and alternative bases or acts that would have been uncovered in a reasonable investigation," although this rule does not provide "an unlimited license to extend [the] claim endlessly beyond the bounds and parameters encompassed by the administrative charge."[20]

      The City argues that because Johnson's and Tinker's administrative complaints alleged only disparate *treatment*, Johnson and Tinker cannot now proceed on a disparate *impact* theory. Most courts to consider the issue have concluded that an administrative complaint alleging disparate treatment does not exhaust administrative remedies as to a disparate impact claim.[21]

---

employee from using the prior acts as background evidence in support of a timely claim.").

[17] Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir. 2005).

[18] Id.

[19] Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 32 (1st Cir. 2009); Stephenson v. State St. Bank & Trust Co., 924 F. Supp. 1258, 1276 (D. Mass. 1996).

[20] Thornton, 587 F.3d at 32.

[21] See Pacheco v. Mineta, 448 F.3d 783, 791-92 (5th Cir. 2006); Greater Indianapolis Chapter of N.A.A.C.P. v. Ballard, 741 F. Supp. 2d 925, 939-40 (S.D. Ind. 2010); Brown v. Ameriprise Fin. Servs., Inc., 707 F. Supp. 2d 971, 976-77 (D. Minn. 2010); Donaldson v. Microsoft Corp., 205 F.R.D. 558, 571 (W.D. Wash. 2001); Cavallaro v. Corning Inc., 93 F.

Disparate treatment and disparate impact claims require proof of different elements. Disparate impact requires proof of "employment practices, often facially neutral, which (1) cannot be justified by business necessity and (2) in fact impose harsher burdens on employees who share a protected characteristic,"[22] while disparate treatment arises when an employer treats an employee less favorably because of, in this instance, his or her race.[23] Thus, a complaint alleging disparate treatment only exhausts administrative remedies as to a disparate impact claim if it challenges a facially neutral employment practice.[24]

On their face, Johnson's and Tinker's administrative complaints allege disparate treatment. In relevant part, Tinker's administrative complaint states the following:

> In 2006 or 2007, I took the Civil Service Exam to become a Lieutenant. Although I was the most qualified applicant with the most seniority and experience, I was not selected for the position. Instead, Gerard Bailey, who is Caucasian and has less seniority and experience than me, was chosen for the Lieutenant position in February or March 2009. Upon knowledge and belief, all of the candidates in my group, including Mr. Bailey[,] scored an 86 on the exam. . . . There are approximately 80 to 100 Lieutenants employed by the City of Boston Police

---

Supp. 2d 334, 341 (W.D.N.Y. 2000) (collecting cases); Stephenson, 924 F. Supp. at 1277; Hellmann-Blumberg v. Univ. of Pac., No. 2:12-cv-00286-GEB-DAD, 2013 WL 1326469, at *4 (E.D. Cal. Mar. 29, 2013) (collecting cases); De Los Santos v. Panda Exp., Inc., No. C10-01370 SBA, 2010 WL 4971761, at *4-5 (N.D. Cal. Dec. 3, 2010); Welch v. Eli Lilly & Co., No. 1:06-cv-0641-RLY-JMS, 2009 WL 734711, at *2 (S.D. Ind. Mar. 18, 2009). But see Gomes v. Avco Corp., 964 F.2d 1330, 1334-35 (2d Cir. 1992); Showell v. Se. Pa. Transp. Auth., No. 06-1574, 2008 WL 2389459, at *8 (E.D. Pa. June 10, 2008).

[22] Cumpiano v. Banco Santander P.R., 902 F.2d 148, 156 (1st. Cir. 1990).

[23] Id.

[24] See Pacheco, 448 F.3d at 792 ("A neutral employment policy is the cornerstone of any EEO disparate-impact investigation, since the EEO must evaluate both the policy's effects on protected classes and any business justification for the policy.").

Department; only 4 of whom are black.[25]

Johnson's administrative complaint alleges the following:

> Upon information and belief, both John Daley and Gerald Bailey, both white, were promoted as a result of this promotion cycle, even though they received similar scores on the exam. Upon information and belief, Gerald Bailey does not have as much experience as me with the BPD. I believe that his [sic] is a consistent pattern in the Police Department, as there are only about four Black lieutenants out of about 100 in the entire force.[26]

These complaints both read most naturally as allegations of intentional discrimination. Importantly, both complaints fail to allege a facially neutral employment practice as the cause of the alleged discrimination.[27] Although they mention the Exam in passing, this reference would not trigger an investigation into the Exam's validity because Plaintiffs assert that they received the same score as the white candidates actually promoted.[28] The complaints point to intentional discrimination after the Exam results were finalized, leading over time to significantly fewer African-American lieutenants than Plaintiffs would expect absent the alleged disparate treatment.

---

[25] Mem. Supp. Mot. to Dismiss, Ex. 5 [#16].

[26] Mem. Supp. Mot. to Dismiss, Ex. 7 [#16].

[27] See Brown v. Ameriprise Fin. Servs., Inc., 707 F. Supp. 2d 971, 976-77 (D. Minn. 2010) ("Courts have consistently required that discrimination charges 'identify or describe the neutral employment practice which is alleged to disproportionately affect protected employees' in order to exhaust disparate-impact claims. Otherwise, every assertion of intentional discrimination could be read to imply unintentional discrimination, and all claims of disparate treatment would exhaust claims of disparate impact." (citations omitted)).

[28] See Donaldson v. Microsoft Corp., 205 F.R.D. 558, 571 (W.D. Wash. 2001) ("[T]here was nothing in the original EEOC documents to suggest that [Plaintiff] was pointing to the rating system [as] a source of disparate impact."); De Los Santos v. Panda Exp., Inc., No. C10-01370 SBA, 2010 WL 4971761, at *5 (N.D. Cal. Dec. 3, 2010) ("This passing reference to the GM Points program neither states nor implies that it had any disparate impact on [Plaintiff] or any other employee.").

By stating that the promoted candidates received the same Exam score, the complaints suggest that the facially neutral Exam actually operated in a neutral fashion. Thus, a reasonable investigation of the administrative complaints would focus on why the BPD preferred a white candidate with less experience to a more experienced African-American candidate with the same score. Because the investigation would not consider whether the Exam had a disparate impact on minority candidates, Plaintiffs Johnson and Tinker have failed to exhaust their administrative remedies.

IV.     Conclusion

For these reasons, the City's Partial Motion to Dismiss [#15] is ALLOWED IN PART and DENIED IN PART. Plaintiffs Facey and Adams may proceed. Plaintiffs Johnson and Tinker are DISMISSED WITHOUT PREJUDICE from the case for failure to exhaust their administrative remedies.

AN ORDER HAS ISSUED.

/s/ Joseph L. Tauro
United States District Judge