# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BRUCE SMITH, PAUL JOSEPH, MARTIN JOSEPH, KIM GADDY, BRIAN KEITH LATSON, MARWAN MOSS, LEIGHTON FACEY, and LATEISHA ADAMS, | ) ) ) ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) |
| CITY OF BOSTON, MASSACHUSETTS | ) ) |
| Defendant. | ) ) |

Civil Action No.: 12-10291-WGY

## JOINT PRETRIAL MEMO

Pursuant to the Court's order of May 6, 2019 (ECF No. 253), the parties submit the following pretrial memorandum.

Trial in this matter was bifurcated between a liability phase and a damages phase, pursuant to the parties' agreement. Accordingly, the parties held a ten-day bench trial on liability in December 2014 and January 2015, during which the Court admitted over 80 exhibits and admitted in evidence all the trial testimony and exhibits from Lopez v. City of Lawrence, No. 07-11693-GAO (D. Mass.). On November 16, 2015, the Court granted judgment on liability in favor of the Plaintiffs, holding that the Court's "conclusion is simple: the Department's lieutenant-selection process—ranking candidates for promotion based on their scores on an exam administered in 2008 ("2008 exam")—had a racially disparate impact and was not sufficiently job-related to survive Title VII scrutiny. Accordingly, the Court imposes liability on the City." Smith v. City of Bos., 144 F. Supp. 3d 177, 181 (D. Mass. 2015), on reconsideration, 267 F.

1

Supp. 3d 325 (D. Mass. 2017).  On July 26, 2017, this Court revisited its ruling pursuant to the instructions of the First Circuit and affirmed, ruling again that the 2008 lieutenants' exam violated Title VII.  ECF No. 245.   The parties agreed to seek interlocutory review in the First Circuit, and on April 17, 2019, the court denied the parties' request for appellate review.

The parties, therefore, are now ready to proceed with a trial in this matter as to damages.

## I.     Concise Summary of the Evidence

### A.     Plaintiffs' Summary

Traditionally, once an exam has been found to be discriminatory in violation of Title VII, courts order remedies including promotion, backpay, and declaratory relief to ensure that the unlawful exam will not be used in the future.  Plaintiffs expect the evidence to show that, by using a discriminatory exam for promotions for lieutenant in 2008 in violation of Title VII, the City caused a shortfall in minority promotions.  In addition, Plaintiffs' expert will further demonstrate that even the few Plaintiffs who were promoted from the 2008 exam, they experienced a significant delay in the date of their promotion, and thus a loss in earnings due to the delay.  To demonstrate the number of promotions that should be ordered and the amount of backpay owed, Plaintiffs will produce a shortfall analysis performed by their expert to show the amount of damages (including the number of promotions and amount of backpay) that should be awarded to Plaintiffs in this case.

Plaintiffs strongly object to the City's reliance on the 2014 lieutenants promotional exam. Plaintiffs' position is that the 2014 exam is irrelevant and not admissible for the purposes of determining damages for individuals who suffered discrimination as a result of the City's use of the 2008 exam.  Thus, Plaintiffs will be filing a *motion in limine* to exclude evidence related to the 2014 exam at trial.

B.        **Defendant's Summary**

Defendant City of Boston ("City") expects that the evidence will show that none of the

remedies Plaintiffs request are appropriate and/or legal.   It is axiomatic that damages and

remedies under Title VII for disparate impact discrimination are intended to remedy proven

losses suffered by victims of that discrimination.  Just because Plaintiffs have shown that the

2008 exam was not valid for rank order promotions does not mean they are automatically

entitled to any relief under Title VII (beyond their reasonable attorney's fees and costs).  Instead,

each Plaintiff must show that s/he is individually entitled to relief under Title VII.

Inasmuch as this case involves a promotional exam to lieutenant in the Boston Police

Department ("BPD"), the public has a significant interest in ensuring that the City is safe and

that its law enforcement functions appropriately.  In addition, other sergeants (black, Hispanic,

Asian and white) who performed well on the recent 2014 exam have rights that cannot be

ignored.  See Ricci v. DeStefano, 557 U.S. 557 (2009).  At the damages phase, the Court must

balance all of these interests and rights.  See Texas Department of Housing and Community

Affairs v. Inclusive Communities Project, 576 U.S. __, 135 S.Ct. 2507 (2015).

In this regard, the City contends that the 2014 lieutenants' promotional exam and its

results are critical – and will offer the expert testimony of Jacinto Silva, Ph.D. (expert report

forthcoming) on this issue.  At the liability trial, Plaintiffs argued, *inter alia*, that the City in 2008

should have offered a multi-component promotional exam that had both oral and situational

components (such as oral boards and an in-basket exercise) through an assessment center, which

would also reduce the impact of the written knowledge test component.[1]  Plaintiffs also argued

---

[1] Indeed, Plaintiffs did not identify any clear alternative to the knowledge-based 2008 examination. However, Plaintiffs and their experts frequently alluded to a multi-component examination, with oral and situation components.

that a multi-component exam would produce promotional results that had far less adverse racial impact than the knowledge-based 2008 exam and would be a valid basis to make rank order promotional decisions.

In 2014, the City (in its first promotional exam since 2008) used a multi-component promotional exam, which included both oral and situational components, through an assessment center and that dropped the weight of the written knowledge test from 80% to 36% of the total score. More specifically, the 2014 exam had four separate components: a technical knowledge written test (36%), an in-basket test (20%), an oral board test (with two exercises) (24%), and education and experience points (20%). One hundred and eleven BPD sergeants took the 2014 exam, including three of the Plaintiffs.[2] The details of the 2014 exam and its results are contained in Trial Exhibit 85 (and its exhibits), which the Court entered fully into the Trial Record.

The 2014 exam results demonstrate that Plaintiffs were wrong – a multi-component exam, with oral boards and an in-basket exercise and less reliance on a technical knowledge written test, did not reduce adverse racial impact. Indeed, the rank order results of the 2014 exam have no black candidates in the top 20 and only one black candidate (at rank order 21) in the top 50 rank order positions. The remaining positions in the top 50 were white candidates, except for one Hispanic candidate at rank order 40. (Tr. Exh. 85, Ex. 4 thereto).

Three of the eight Plaintiffs took the 2014 exam. Their scores placed them at rank order 80, 90 and 110, out of 111 applicants.[3] See Trial Exhibit 85, Ex. 4. Thus, they will never be reached for promotion to lieutenant.

---

[2] The 2014 examination (including testing for promotion to police sergeant, lieutenant and captain) cost the City well over $1,600,000.

[3] In addition, one of the two non-Plaintiffs that Plaintiffs seek to have promoted took the 2014 exam and scored at rank order number 62. See Trial Exhibit 85, Ex. 4. The two Plaintiffs (as well as one of the non-Plaintiffs

The 2014 exam format did not reduce promotional adverse impact by race as compared to the 2008 exam.  More specifically, there were 33 promotions to lieutenant using the 2008 exam scores – 28 whites, and 5 blacks.  By comparison, if 33 promotions are made from the 2014 exam final rank order list, 32 would be whites and only one would be black (with the next black candidate being in the rank order position of 56, and thus highly unlikely ever to be promoted using the 2014 exam list).  See Tr. Exh. 85, Ex. 4 thereto.

The Court should use the 21014 exam's results to in determining all of the post-trial remedies Plaintiff seek (the City more specifically addresses each of Plaintiffs' claimed categories of damages in the "Issues of Law" section below).  For example, Plaintiffs seek an order that the City be prohibited from administering any "80/20" knowledge-based promotional exams in the future although the results of the 2014 exam (as well as the results of the earlier 2002 exam) failed to reduce adverse racial impact.  Under Title VII, this Court has no authority to block the use of any specific promotional exam format going forward unless an equally valid, less discriminatory exam format exists that meets the City's needs.[4]  See Texas Department of Housing, 135 S.Ct. at 2518 and 2523.

Moreover, police promotions should (indeed, must) be based on merit – both to comply with the Commonwealth's civil service law (Mass. Gen. L. c. 31) and to serve the public's interest in having the most worthy police officers promoted.  However, Plaintiffs have made no showing that they have the "merit" to deserve such promotions.  To order promotions (and award corresponding back pay relief) under Title VII based simply on a plaintiff's race or his/her

---

listed by Plaintiffs for promotion) who did not take the 2014 exam have neither demonstrated the requisite interest nor the necessary "merit" for promotion.

[4] This is especially true since Judge O'Toole in Lopez found the "80/20" knowledge-based promotional examination to be valid, at least with respect to promotion to sergeant.

involvement in litigation is not appropriate, justified, equitable, in the public interest, or legal (especially under recent Supreme Court and First Circuit precedent).[5]

Furthermore, the Court found the 2008 exam invalid for rank order promotions. Therefore, the 2008 exam's results cannot form the basis for any relief in this case.

In the current case, equity and the law both compel the conclusion that any promotions must be based on merit if at all possible, and the 2014 exam provides just such an impartial and merit based list of who should be promoted.  Thus, the Court should allow promotions to lieutenant to be made based on the 2014 exam's results and not based on rewarding the Plaintiffs.

As noted, the City more specifically addresses each of Plaintiffs' claimed categories of damages in the "Issues of Law" section below.

## II.      Statement of Established Facts

The parties have not yet agreed on established facts at this time.  The parties will work together to produce and file a statement of established facts at least ten days prior to trial.

## III.     Contested Issues of Fact

The primary contested issue of fact will be whether damages should be awarded to Plaintiffs and, if so, what categories of damages and what amounts, if any, should be awarded to the class or to the named Plaintiffs due to the City of Boston's use of the 2008 lieutenants' promotional exam.

## IV.      Jurisdictional Questions

---

[5] Furthermore, at least one of the Plaintiffs is no longer suitable for promotion to lieutenant and would be subject to "bypass" if placed at the top of a promotion list.  See Mass. Gen. L. c. 31, § 27; City of Cambridge v. Civil Service Commission, 43 Mass. App. Ct. 300, 304, rev. denied, 426 Mass. 1102 (1997).  Of course, any person qualified for promotion, either by their score on a rank ordered promotional examination or by Court order, should be placed at the top of the promotional list where they are subject to bypass for disciplinary history or other factors making their promotion improper under the Commonwealth's civil service law.

None.

**V.      Pending Motions**

On May 22, 2019, Plaintiffs filed a renewed motion for class certification of a class

including all minorities who took the 2008 Boston police lieutenant's promotional exam.  ECF

No. 255.  The City opposes Plaintiffs' motion and currently has until June 6, 2019 to file its

opposition.

Plaintiffs further anticipate filing a motion *in limine* to exclude evidence related to the

results of the 2014 Boston police lieutenant's promotional exam on the basis that it is not

relevant to the amount of damages owed to the Plaintiffs in this matter.  The City, which has not

yet determined what, if any, motions *in limine* it may file, will oppose any such motion.

**VI.     Issues of Law**

**A.      Plaintiffs' Issues of Law**

**1.      Class Certification**

Plaintiffs first moved for class certification on October 18, 2013.  ECF No. 47.  On

March 25, 2014 the court denied the motion without prejudice (ECF No. 70), and the parties

understood that the Court wished to address the merits before addressing the question of class

certification. This is in keeping with several cases where this Court has indicated that addressing

the merits first could help shape the class certification decision.  See, e.g., Awuah v. Coverall N.

Am., Inc., 791 F. Supp. 2d 284, 286 (D. Mass. 2011) ("the Court denied class certification

without prejudice to possible later certification") (citing Order, Feb. 11, 2010, ECF No. 227).  .

Moreover, the law is clear, that since the case was filed as a class action, and there has been no

final decision on that motion, the claims of all the class members have been tolled.  See Am.

Pipe & Const. Co. v. Utah, 414 U.S. 538, 561 (1974) (claims of putative class members are

tolled by the filing of a Rule 23 class action lawsuit); Crown, Cork & Seal Co. v. Parker, 462

U.S. 345, 354 (1983) ("Once the statute of limitations has been tolled, it remains tolled for all

members of the putative class until class certification is denied. At that point, class members may

choose . . . to intervene as plaintiffs in the pending action."); Yang v. Odom, 392 F.3d 97, 102

(3rd Cir. 2004) (citing Edwards v. Boeing Vertol Co., 717 F.2d 761 (3d Cir.1983) (consistent

with Crown, Cork & Seal, tolling does not end until there has a been a "final determination" on

class certification such as a denial "with prejudice"); Charleswell v. Chase Manhattan Bank,

N.A., 2009 WL 1850650, at *16 (D.V.I. June 24, 2009) (denial of class certification without

prejudice was not a final ruling and did not stop tolling).

Having found that the 2008 lieutenants exam was not valid and caused disparate impact

racial discrimination, this Court should now certify a class of all minorities who took the 2008

lieutenants exam.  Indeed, the Supreme Court has held that "if the employer 'used a biased

testing procedure to evaluate both applicants for employment and incumbent employees, a class

action on behalf of every applicant or employee who might have been prejudiced by the test

clearly would satisfy the commonality and typicality requirements of Rule 23(a).'" Wal-Mart

Stores, Inc. v. Dukes, 564 U.S. 338, 353 (2011) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457

U.S. 147, 159, n. 15 (1982)).  Moreover, courts have widely held that class certification is proper

post-judgment, especially where the judgment itself suggests that class treatment would be in the

interests of justice, as is the case here. Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288,

299 (1st Cir. 2000) ("A certification decision is still necessary to determine whether the prior

resolution carries res judicata effect with respect to purported class members. Thus, the district

court did not err by taking into account the common nucleus of operative facts and issues, even

though certain of these already had been resolved, when it was deciding whether to certify the

class.") (citing <u>Wright v. Schock</u>, 742 F.2d 541, 545 (9th Cir.1984) (affirming a postjudgment class certification decision in part because "the district court did not use its Rule 56 determination as a basis for deciding whether a class action was maintainable")).  Finally, class certification is in the interests of justice as a class-wide remedy will benefit all of the victims of the City's use of a discriminatory promotional exam.[3]  Indeed, in disparate impact cases such as this, every victim of discrimination should receive back pay or this Court risks being dragged into a "a quagmire of hypothetical judgments," found by numerous Courts of Appeals to be inappropriate and/or inconsistent with Title VII's broad remedial purpose.  <u>See Segar v. Smith</u>, 738 F.2d 1249, 1290 (D.C. Cir. 1984) (collecting cases) (refusing to engage in "mere guesswork" to calculate back pay by delving into each victim's employment history).

## 2. Damages

In any disparate impact discrimination case where liability has been found, there are four elements that are presumptively part of any make-whole remedy: 1) Injunctive relief enjoining use of the disputed employment practice; 2) Injunctive relief, requiring the hiring or promotion of aggrieved individuals, along with retroactive seniority; 3) Back pay, and 4) Attorney fees, costs, and interest.[6]  <u>United States v. City of New York ("Vulcan Society")</u>, 681 F. Supp. 2d 274, 279 (E.D.N.Y. 2010) (citing <u>Berkman v. City of New York</u>, 705 F.2d 584, 595 (2d Cir. 1983)).  Plaintiffs are will pursue each of these remedies at the trial on damages.

With regard to back pay, the law is clear that upon a finding of disparate impact discrimination in hiring or promotions, backpay must be awarded, without requiring the highly

---

[6] In addition, Plaintiffs have a claim for emotional distress damages.  Damages for emotional distress are recoverable under M.G.L. c. 151B.  <u>Stonehill Coll. v. Massachusetts Comm'n Against Discrimination</u>, 441 Mass. 549, 570, 808 N.E.2d 205, 221 (2004).  In the <u>Vulcan Society</u> case, the court awarded emotional distress damages to firefighters who suffered disparate impact discrimination under New York state anti-discrimination law.  <u>Vulcan Society</u>, 897 F. Supp. 2d 30, 43 (E.D.N.Y. 2012).

speculative and nearly impossible task of trying to determine who would have been promoted in the absence of such discrimination.  As explained in <u>Vulcan Society</u>, "[a]fter a finding of liability for employment discrimination under Title VII, there is a presumption that back pay, priority hiring, and retroactive seniority are the proper forms of relief to remedy past employment discrimination."  <u>United States v. City of New York</u>, 905 F. Supp. 2d 438, 444 (E.D.N.Y. 2012 (citing <u>Wrenn v. Sec'y, Dep't of Veterans Affairs</u>, 918 F.2d 1073, 1076 (2d Cir.1990)).  Equally important, in disparate impact cases such as this, every victim of discrimination should receive back pay because the Defendant cannot prove who would (or would not) have been promoted, but for the discrimination, without forcing the parties and this Court to engage in "a quagmire of hypothetical judgments," found by numerous Courts of Appeals to be inappropriate and/or inconsistent with Title VII's broad remedial purpose.  <u>Segar v. Smith</u>, 738 F.2d 1249, 1290 (D.C. Cir. 1984) (collecting cases) (refusing to engage in "mere guesswork" to calculate back pay by delving into each victim's employment history) *cert. denied,* 471 U.S. 1115 (1985).  See also <u>McClain v. Lufkin Indus., Inc.</u>, 519 F.3d 264, 281 (5th Cir. 2008) ("exact reconstruction of each individual claimant's work history, as if discrimination had not occurred, is not only imprecise but impractical."); <u>Catlett v. Missouri Highway & Transp. Comm'n</u>, 828 F.2d 1260, 1267 (8th Cir. 1987) (accord); <u>United States v. Brennan</u>, 650 F.3d 65, 139 (2d Cir. 2011)(accord); <u>Pettway v. Am. Cast Iron Pipe Co.</u>, 494 F.2d 211, 261 (5th Cir. 1974) (accord); <u>Domingo v. New England Fish Co.</u>, 727 F.2d 1429, 1444 (9th Cir.), <u>modified on other grounds,</u> 742 F.2d 520 (9th Cir. 1984) (accord).

### 3.      Attorney's Fees and Costs

"Prevailing parties are expressly authorized to seek attorney's fees for claims under both Title VII and Massachusetts General Laws chapter 151B."  <u>McDonough v. City of Quincy</u>, 353

F. Supp. 2d 179, 183 (D. Mass. 2005) (citing 42 U.S.C. § 2000e–5(k); M.G.L. c. 151B, § 9).

Moreover, prevailing Plaintiffs are entitled to recover their costs pursuant to Title VII.

Plaintiffs' counsel expended hundreds of thousands of dollars in expert witness fees and other costs, for which they have never been reimbursed, and in addition, incurred hundreds of thousands of dollars in expert fees in the <u>Lopez</u> litigation, which evidence was also specifically introduced and relied upon in this case. Moreover, Plaintiffs' counsel have also put in well over 1,500 hours in this case without any compensation.

### B.     Defendant's Issues of Law

As discussed in its "Summary of the Evidence" section above, it is the City's overarching position that, as a matter law (as applied to the facts of this case), none of the remedies Plaintiffs request are appropriate and/or legal. With more specific regard to each class of damages Plaintiffs seek, the City states:

### 1.     Promotions.

No Plaintiff – or non-Plaintiff – should be promoted to the rank of lieutenant. Such relief would be legal error and inequitable for several reasons.

> a.     As the Court did not find a statistically significant disparate racial impact in promotion rates on the 2008 exam, there is no factual basis for the court to order that Plaintiffs be promoted.

In the Decision, the Court found that Plaintiffs had proved adverse racial impact, but inherently based this decision on Plaintiffs' showing an adverse racial impact on passing rates, average scores, and delays in promotions, rather than by showing an adverse impact in promotion rates by race. <u>See</u> Decision at 35-36, 48-52. The Court found this to be in accord with the Supreme Court's holding in <u>Connecticut v. Teal</u> that an employer's "bottom line" showing of no discrimination in promotion rates was not a defense to a disparate impact case

when racial discrimination existed in other parts of the process.  See Decision at 35-36;

Connecticut v. Teal, 457 U.S. 440, 450 (1982).

However, such a finding of adverse racial impact based on non-promotional factors

makes the ordering of promotions inherently unsuitable as a post-trial remedy.  If there was no

showing (or at least no strong showing) of adverse racial impact in promotion rates, then there is

no adequate factual predicate for the Court to order race based promotions.

Indeed, the evidence at trial was that any difference in the 2008 exam's promotion rates

by race was statistically insignificant.  Thus, any numerical difference in promotion rates should

not be given any factual or legal significance.

> Statisticians are well aware that this assumption of equal opportunity, even if true, does
> not mean that the two groups will experience exactly equal outcomes: random variations
> will often create differences.  To assess the likelihood that an observed difference in
> outcomes resulted from mere chance, statisticians calculate the probability of observing a
> difference equal or greater than that which actually occurred, assuming equal
> opportunity.  They call this probability the 'p-value.'  Statisticians usually apply the label
> 'statistically significant' to the observed differential outcomes if the p-value is less than
> five percent, although they sometimes use a different cut-off, such as one-percent.

Jones v. City of Boston, 752 F.3d 38, 43 (1st Cir. 2014) (citations and footnotes omitted).

In this case, the "p-value" for promotion rate by race was 0.52, which was greater than

the 0.5 or less threshold required for statistical significance.  For the Court to order promotions

based solely on the race of the applicant in the absence of a clear showing of statistically

significant differences in the promotion rates by race would be to award relief that is not

equitable or compensatory.  Moreover, and as this Court repeatedly stated at trial, the

requirement of merit based promotions in the Commonwealth's civil service laws, Mass. Gen. L.

c. 31, should be respected as much as possible.  Accordingly, the Court should not order

promotional relief.

        b.      Were the Court to consider "promotional" relief, it should use the
                   2014 exam results to determine the promotional list's order.

As noted, the Court's consideration of Plaintiffs' request for promotion does not occur in

a vacuum – instead it occurs in the very important context of the 2014 exam and the

Massachusetts civil service system.  Thus, if the Court decides that "promotional" relief may be

an appropriate remedy in this case, any such relief should be made using the 2014 exam results,

<u>and</u> should be done by placing the names of the sergeants getting such relief at the top of the

BPD lieutenant promotion list so that, like anyone else who scored highly on the 2014 exam,

BPD can determine if they are suitable for promotion or should be bypassed.   Having the BPD

promote only the most worthy sergeants is imperative, since (as the trial testimony demonstrated

and as the Decision held) the position of police lieutenant is an important position in that

lieutenants are in charge of supervising the sergeants as well as making sure that the treatment of

suspects and prisoners is proper.  <u>See</u> Decision at 14-15.

In addition, <u>all</u> sergeants who took the 2014 exam have rights and expectations, which the

Court should take into account.  As the Supreme Court observed in <u>Ricci</u>, people regardless of

race who "invested substantial time, money, and personal commitment in preparing for the tests"

have "legitimate expectations" that they would be promoted based on their exam results, and

should not have their promotions denied solely based on racial considerations.  <u>See</u> <u>Ricci</u>, 557

U.S. at 583-84.  It is noteworthy that the highest scoring black sergeant on the 2014 exam also

took the 2008 exam and was not promoted.  <u>See</u> Trial Exh. 2.  If, as Plaintiffs propose, the Court

promotes them to lieutenant, they would do so at the expense of this female black sergeant who

was ranked 21 out of 111 on the 2014 exam.  <u>See</u> Trial Exh. 85, Ex. 4

Importantly, any promotions ordered by a court should if possible "distinguish between

worthy and unworthy" people for promotion.  <u>See</u> <u>Howe v. City of Akron</u>, 723 F.3d 651, 661-

662 (6th Cir. 2013).  Here, the 2014 exam results, along with the application of the bypass

procedures, provide just such a basis to distinguish factually between the worthy and unworthy

for promotion.

Finally, Plaintiffs claim that this Court should make seven promotions based on Dr.

Wiesen's "shortfall" analysis.  However, this analysis is mathematically incorrect.  As the City's

expert witness, Dr. Jacinto Silva, has and will show, even were the Court to decide to follow a

"shortfall" calculation of the type suggested by Dr. Wiesen, the actual racial "shortfall" would be

four (rounded from 4.07) positions.  Accordingly, were the Court to order "promotional" relief,

no more than four sergeants should be placed at the top of the current promotion list and the

Court's selection of sergeants to place at the top of this list should reflect the 2014 exam results.

> ### 2.      Back Pay and Interest.

>> a.      Only individual Plaintiffs who can establish that they would have
>> been promoted are entitled to back pay.

Despite a *prima facie* presumption that a prevailing Title VII disparate impact plaintiff

will be awarded back pay, this presumption can be rebutted.  See Association Against

Discrimination in Employment, Inc. v. City of Bridgeport, 647 F.2d 256, 289 (2d Cir. 1981).  In

the normal disparate impact promotional exam case prevailing plaintiffs may be entitled to back

pay if they are entitled to promotion.  Here, for the reasons describe above, Plaintiffs are not

entitled to promotion.  Given that Plaintiffs scored poorly on the 2014 exam, the Court should

not and cannot presume that any of the Plaintiffs would have been promoted had the 2008 exam

been a multi-component, assessment-style test.  Hence, they should not receive back pay.

To award back pay to Plaintiffs who scored so poorly on (or did not take) a subsequent

exam, which used the very components urged by Plaintiffs throughout this case, would be

contrary to the intent of Title VII – to award damages such as back pay to those who have been shown to be the actual victims of discrimination.

> b.    Even were the Court to award back pay, the amount should be reduced by 63.7 percent.

Title VII disparate impact case law involving public safety promotional exams is clear that the amount of back pay that should be awarded to a particular plaintiff must be reduced to reflect the statistical chance (or probability) that a particular plaintiff would have scored highly enough on a valid exam to be promoted.  See, e.g., Alexander v. City of Milwaukee, 474 F.3d 437, 449-51 (7th Cir. 2007) (applied "loss of a chance doctrine" to reduce plaintiffs' damages in disparate impact discrimination case to accurately reflect "what they in fact lost was a chance to compete on a fair footing, not the promotion itself"); United States v. City of Miami, 195 F.3d 1292, 1300 (11th Cir. 1999) ("Based on mathematical probability alone, each lieutenant candidate stood only a one in twenty-three (or four percent) chance of promotion and each sergeant candidate stood only a one in twelve (or eight percent) chance of promotion.").  Thus, each plaintiff was entitled "under the pro-rata method" to "a *proportional* share of the full monetary value of the promotion for which they were eligible.  In this case, each certified sergeant candidate not selected for the promotion would receive a one-twelfth share; while each certified lieutenant candidate not selected for the promotion would receive a one-twenty-third share."  Id. (emphasis in original)).[7]

---

[7] Of additional note, the City of Miami decision cites and follows similar proportional damages decisions from the D.C., Second, Fifth, Seventh, and Eighth Circuits.  See City of Miami, 195 F.3d at 1300-01, citing Dougherty v. Barry, 869 F.2d 605, 614-15 (D.C. Cir. 1989); Ingram v. Madison Square Garden Center, Inc., 709 F.2d 807, 812 (2d. Cir. 1983); United States v. United States Steel, 520 F.2d 1043, 1055-1056 (5th Cir. 1975); Stewart v. General Motors Corp., 542 F.2d 445, 452-54 & n.7 (7th Cir. 1976); Hameed v. International Ass'n of Bridge, Structural, & Ornamental Iron Workers, Local Union No. 396, 637 F.2d 506, 519–21 (8th Cir. 1980).

Both the "loss of chance" and "pro-rata" damages doctrines substantially reduce damages because the chance that a particular Title VII disparate impact plaintiff would have received a promotion in a public safety context even with a "fair" or "valid" exam is much less than 100% since there are so many more applicants of all races than openings for promotion.[8]  Thus, any back pay award must be reduced to reflect the improbability of a promotion even with a so-called fair or valid process.[9]  See, e.g., Alexander, 474 F.3d at 451 ("[T]he purpose of compensatory damages is to compensate for what was lost, and under the damages rubric that applies, what was lost is only a chance …. [C]ompensatory damages for a lost chance must be linked to promotional likelihood.").

Here, 91 sergeants took the 2008 exam and there were only 33 promotions made based on that exam over six years.  Decision at 28 and Tr. Exh. 72 at 7.  Thus, the loss of chance doctrine requires that any back pay awarded to a Plaintiff must be reduced by 63.7%, which reflects the 36.3% statistical chance that any one of these 91 sergeants taking the exam would have been one of the 33 exam takers who were promoted.[10]  To be clear, this assumes that each sergeant (including Plaintiffs) who took the exam, had the equal chance of scoring high enough to be promoted.

Moreover, Plaintiffs' claim that the average date of promotion should be November 28, 2011 is incorrect.  In fact, the average date of these 33 promotions is February 16, 2012 not the

---

[8] As discussed earlier, based on their poor performance, the three Plaintiffs who took the 2014 exam have no chance at promotion.

[9] For example, were the Court facing an invalid exam with 100 applicants and was used to make 20 promotions, a plaintiff exam-taker must have his back pay award reduced by 80% percent to reflect that plaintiff's 20% (or one in five) statistical chance of scoring high enough to get a promotion (and thus be awarded back pay) on that exam if it had been valid.

[10] This calculation of the loss of a chance reduction percentage is a simple calculation not requiring an expert.  One simply subtracts the number of people getting a promotion from the number of people taking the examination, and then divides this sum by the number of people taking the examination. For example: in the current matter (91-33)/91 = 63.7%.

November 28, 2011 date given by Dr. Wiesen in his "Analyses" (docket # 200-1).  See Affidavit of Jacinto M. Silva, Ph.D. (attached to City's Memorandum on Damages, ECF No. __).  If the Court determines to award Plaintiffs back pay, it should be proportional and use the February 16, 2012 date.

### 3. Injunctive Relief.

Plaintiffs also seek a Court order prohibiting the City from future reliance on the so-called 80/20 exam used in this case.  However, the Court should not and cannot enjoin the City from using the 80/20 type test, especially since the results of the 2014 exam show that this 2014 exam may well have a greater racial adverse impact than the 2008 exam.

Instead, the Court should allow the City the discretion that it has under State law (subject, of course, to judicial review and administrative review and challenge) to use the police promotional exam provided by HRD or to administer its own police promotional exam with the permission of HRD.[11]  Even though the use of any promotional exam is always subject to challenge under Federal and State law, the requested relief exceeds the Court's authority because there is no evidence that there exists an exami that is both (i) equally or more valid than the "80/20" type used on the 2008 exam, and (ii) will consistently produce less adverse racial impact.

> This is particularly true given the Supreme Court's recent disparate impact holding that: before rejecting a business justification – or, in the case of a governmental entity, an analogous public interest – a court must determine that a plaintiff has shown that there is 'an available alternative … practice that has less disparate impact and serves the [entity's] legitimate needs.'  Ricci, supra, at 578, 129 S.Ct. 2658….

> [If an employer's business] judgments are subject to challenge without adequate safeguards, then there is a danger that potential defendants may adopt racial quotas – a circumstance that … raises serious constitutional concerns.

___

[11] Under Massachusetts law, the City cannot develop or administer any civil service promotional examination without the approval of HRD.  Thus, HRD has the ultimate authority to develop and administer a police promotional examination.

Texas Department of Housing, 135 S.Ct. at 2518 and 2523.

Although the Court's Decision (at 80-81 n.43) states that Texas Department of Housing does not provide binding Title VII precedent, the First Circuit applied that case in its recent Title VII disparate impact decision in Abril-Rivera v. Johnson, which relied upon Texas Department of Housing in deciding in favor of the government defendant.  See Abril-Rivera v. Johnson, 806 F.3d 599, 607-608 & 611 (1st Cir. 2015).  For the Court to order the City not to use the "80/20" type of exam would lack any reasonable or factual support.  This is particularly true since Plaintiffs did not prove at trial that there was an alternative exam format which was equally valid and would consistently produce less adverse racial impact.  Accordingly, the Plaintiffs' request for injunctive, prospective relief must be denied.

### 4.     Emotional Distress Damages.

Plaintiffs also seek an award of emotional distress damages, a form of compensatory damages, under their Mass. Gen. L. c. 151B count only.  See Plaintiffs' Memorandum at 8.[12] This request must be denied for several reasons.

a.     Plaintiffs have waived emotional distress damages under c. 151B.

Plaintiffs have waived any request for emotional distress damages under c. 151B.  There is no request for emotional distress damages in the Second Amended Complaint (ECF No. __).  In fact, and in sharp contrast to requesting emotional distress damages, Plaintiffs only request as relief in addition to "declaratory and injunctive relief … damages in the form of back pay and other damages allowable by Title VII of the Civil Rights Act of 1964."  Second Amended Complaint at ¶ 17 (emphasis added).  However, emotional distress damages are not "damages

---

[12] As Plaintiffs have no right to seek emotional distress damages under Title VII for disparate impact discrimination, they do not request such damages under Title VII.  See 42 U.S.C. § 1981a(a)(1).

allowable by Title VII of the Civil Rights Act of 1964" in a disparate impact case.  See 42 U.S.C. § 1981a(a)(1).

In addition, in the Joint Pretrial Memorandum (ECF No. __), which was filed before the Court bifurcated the trial of this matter, Plaintiffs never mention seeking emotional distress damages.  Accordingly, Plaintiffs' request for emotional distress damages must be denied.

    b. No court has held that emotional distress damages are recoverable in a c. 151B disparate impact case and the SJC has appeared to state that they are not.

Chapter 151B does not on its face provide for emotional distress damages in disparate impact cases.  In addition, Plaintiffs have not cited to (and the City does not know of) a single Massachusetts (or Federal) court decision that has allowed emotional distress damages in a c. 151B disparate impact case.  Even in Bradley v. City of Lynn, No. 05-CV-10213-PBS (ECF No. 154), cited by Plaintiffs, Judge Saris did not award or even mention emotional distress damages

This total lack of judicial precedent to support Plaintiffs' emotional distress request is not at all surprising since a plaintiff in a Title VII disparate impact case is not entitled to emotional distress damages.  See 42 U.S.C. § 1981a(a)(1).  This is important since the Supreme Judicial Court has interpreted the scope of c. 151B disparate impact claims in accordance with corresponding Title VII provisions and case law.  See Lopez v. Commonwealth, 463 Mass. 696, 709 n. 17 (2012) ("Because there is relatively little case law on disparate impact claims in Massachusetts, we look to Title VII for guidance, mindful that Federal interpretations are not binding on this court when construing a State statute."); see generally Wheatley v. American Tel. & Tel. Co., 418 Mass. 394, 397 (1994) ("It is our practice to apply Federal case law construing the Federal anti-discrimination statutes in interpreting G.L. c. 151B."); accord Jones, 752 F.3d at 41 n. 1.

In fact, the only Massachusetts c. 151B emotional distress decision cited by Plaintiffs, The SJC's decision in Stonehill College, unambiguously states that emotional distress damages are a form of "compensatory damages" and then states at footnote 26 that "Compensatory damages may not be awarded in cases involving disparate impact.  See 42 U.S.C. § 1981a(a)(1), (2) (2000)."  Stonehill College v. MCAD, 441 Mass. 549, 574 & n.26 (2004).

Accordingly, Plaintiffs' request for c. 151B emotional distress damages must be denied as this request as without explicit support in the terms of c. 151B, unprecedented under c. 151B case law, and in direct violation of the SJC's longstanding practice of following Title VII precedent in c. 151B disparate impact cases.

### 5.     Attorney's Fees and Costs.

The City does not contest that should Plaintiffs be the "prevailing party" (which the City believes would be an error), they are entitled to an award of their reasonable attorney's fees and costs.  See 42 U.S.C. § 2000e-5(k).  However, such an award cannot include, as Plaintiffs request, the cost to the totally different plaintiffs in Lopez of expert witness fees and costs in that case.

It is important to note that an attorney's fee and cost award is part of a judgment to the plaintiffs in a case, not to their attorneys.  Thus, there is no proper basis, legal or otherwise, for the Court to award Plaintiffs' the costs for the litigation of the Lopez action.  Lopez and this case are different cases with only one party in common, the City of Boston – all of the other plaintiffs and defendants in Lopez are different.  To that end, any award to Plaintiffs in this case of costs from Lopez would be per se wrongful since none of the Smith plaintiffs are responsible for any of these Lopez costs.

### 6.     Class Certification.

As noted, the City opposes Plaintiffs' renewed motion for class certification.  The City will detail its reasons therefore in its separate opposition to the motion, currently due to be filed by June 6, 2019.

**VII.    Requested Amendments to the Pleadings**

In the event that the Court does not grant Plaintiffs' renewed motion for class certification, Plaintiffs seek to add Kenneth Sousa and William Woodley as additional Plaintiffs. Sousa is a minority police office who passed the 2008 Boston police lieutenant exam, but was not promoted.  Sousa filed a timely charge of discrimination with the Massachusetts Commission Against Discrimination and, following a finding in his favor of probable cause on his claim of disparate impact discrimination, is scheduled to proceed to a public hearing in the Fall 2019. Adding Sousa to this case will prevent duplicative litigation of the same issues this Court has already decided.

Woodley is a minority who took and passed the 2008 Boston police lieutenant exam,, but was not promoted.  Woodley filed a timely charge of discrimination with the Equal Employment Opportunity Commission in March 2010 and received a private right to sue letter from the EEOC on August 27, 2013.

The City has and will oppose any attempt by Plaintiffs to add individuals – either through class action or joinder – to this matter at this late date.

**VIII.   Additional Matters to Aid the Disposition of the Action**

Plaintiffs request that the Court schedule a mediation prior to trial and order that Boston Mayor Marty Walsh personally attend.  The City opposes any order imposing mediation and/or any conditions thereon.

**IX.     Probably Length of Trial**

Plaintiffs believe that trial on damages will last two days.  The City believes the damages trial will take between three and five days.

## X.    Witnesses

### A.    Plaintiffs

Plaintiffs may call the following witnesses:

1.    Joel Wiesen, Ph.D. (expert)
      Applied Personnel Research
      62 Candlewood Road
      Scarsdale, NY 10583-6040
      (617) 244-8859

2.    Eddie Chrispin  (fact)
      139 Windham Rd.
      Hyde Park, MA 02136
      (617) 908-7531

3.    William Gross  (fact)
      Boston Police Commissioner
      Boston Police Department
      One Schroeder Plaza
      Boston, MA 02120
      (617) 343-4500

4.    Employee in Human Resources Department for City of Boston Police
      Department

5.    Any witness listed by Defendant.

### B.    Defendant

The City may call the following witnesses:

1.    Desiree Dusseault (fact)
      Deputy Chief of Staff
      Boston Police Department
      One Schroeder Plaza
      Boston, MA 02120
      (617) 343-4500

2.    Mary Flaherty (fact)
      Director of Human Resources

       Boston Police Department
       One Schroeder Plaza
       Boston, MA 02120
       (617) 343-4500

3.      Keeper of the Records (fact)
       Boston Police Department
       One Schroeder Plaza
       Boston, MA 02120
       (617) 343-4500

4.      Greg Long (fact)
       Superintendent in Chief
       Boston Police Department
       One Schroeder Plaza
       Boston, MA 02120
       (617) 343-4500

5.      Paul Mahoney (fact)
       Deputy Superintendent Labor Relations
       Boston Police Department
       One Schroeder Plaza
       Boston, MA 02120
       (617) 343-4500

6.      William Ridge (fact)
       Superintendent Bureau of Field Service
       Boston Police Department
       One Schroeder Plaza
       Boston, MA 02120
       (617) 343-4500

7.      Mary Ryan (fact)
       Director of Payroll
       Boston Police Department
       One Schroeder Plaza
       Boston, MA 02120
       (617) 343-4500

8.      Jacinto Silva, Ph. D. (expert)
       Managing Senior Consultant
       PSI Services, LLC
       611 N. Brand Blvd., 10th Floor
       Glendale, CA 91203
       (800) 367-1565

9.      Stephen Sutliff (fact)
        Deputy Director of Labor Relations
        Boston Police Department
        One Schroeder Plaza
        Boston, MA 02120
        (617) 343-4500

10.     Any witness listed by Plaintiffs.

The City reserves the right to contest the admissibility at trial of the testimony of

Plaintiffs' listed witnesses, call rebuttal or impeachment witnesses, and supplement this witness

list as appropriate.

## XI.    Proposed Exhibits

### A.    Plaintiffs

1.      Expert Report of Joel Wiesen, Ph.D.:  Shortall and Delay Analyses for

BPD Lieut Exam dated December 15, 2015

2.      Expert Report of Joel Wiesen: Rebuttal Report to Dr. Jacobs: Adverse

Impact of the 2008 and 2005 BPD Exams for Lieutenant dated December 9, 2014

3.      Collective Bargaining Agreements between Boston Police Superior

Officer Federation and the City of Boston in effect from 2008 to the present

4.      Pay records for all Plaintiffs (to be subpoenaed)

5.      Boston Superior Officer Pay Scales 2011-present

6.      List of Individuals Promoted from 2008 Boston Police Lieutenants Exam

with dates of promotion

7.      List of retirement dates for Plaintiffs

8.      Actuarial Life Tables

After remedy is decided, Plaintiffs plan on filing a motion for fees and costs and may

present relevant exhibits at that time.

Furthermore, Plaintiffs object to Defendant failing to designate any exhibits as it will harm their ability to prepare for trial.

### B.     Defendant

The City has not yet determined what documents it intends to introduce at the damages trial, although states that it intends to introduce the expert report on damages of Dr. Silva, forthcoming, among others.  The City will notify Plaintiffs of its intended trial exhibits well in advance of trial.

Given the relatively limited scope of this damages trial, the City anticipates that it will be able to work with Plaintiffs on the admissibility of a number of exhibits of obvious import, such as the relevant collective bargaining agreements, pay scales, pay records, and relevant documents reflecting promotion and/or retirement dates, among others.

Respectfully submitted,

BRUCE SMITH, et al.
By their attorneys,

/s/ Harold Lichten
Harold Lichten, BBO#549689
Benjamin Weber, BBO#673736
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02114
(617) 994-5800
hlichten@llrlaw.com
bjweber@llrlaw.com

Stephen Churchill, BBO# 564158
Fair Work, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3262
steve@fairworklaw.com

CITY OF BOSTON,
By its attorneys,


/s/Kay H. Hodge
Kay H. Hodge (BBO # 236560)
John M. Simon (BBO#645557)
Stoneman, Chandler & Miller LLP
99 High Street
Boston, MA 02110
(617) 542-6789
khodge@scmllp.com
jsimon@scmllp.com


Dated:  June 3, 2019


## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document has been served on counsel for all parties through the ECF system on this date.


DATED: June 3, 2019                                      /s/ Harold L. Lichten
                                                          Harold L. Lichten