**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|   |   |
|---|---|
| | ) |
| BRUCE SMITH, et al., | ) |
| | ) Civil Action No.: 12-10291-WGY |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF BOSTON, MASSACHUSETTS | ) |
| | ) |
| Defendant. | ) |
|_____ | ) |

**PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS**

On June 23, 2020, this Court issued an order of judgment in favor of Plaintiffs. The

Court had previously found and then reaffirmed that the City of Boston had violated both Title

VII of the Civil Rights Act and Chapter 151B, Section 4. As a remedy, this Court awarded

backpay and interest totaling $484,866. ECF No. 308. The Court's order vindicates the rights of

minority police officers and brings a successful conclusion to over a decade of litigation brought

by Plaintiffs' counsel challenging the discriminatory use of written promotional examinations

that have severe adverse impact on minorities and has resulted in minorities being under-

represented in the Boston police department's supervisory ranks. Plaintiffs' counsel has always

viewed this case as serving a broader public policy to remedy inequality in the police

department, and this Court acknowledged this view stating that "[t]his is a profoundly important

case, one that evokes the finest of our nation's aspirations to give everyone equal opportunity

and a fair shot." Smith v. City of Bos., 144 F. Supp. 3d 177, 180 (D. Mass. 2015), on

reconsideration, 267 F. Supp. 3d 325 (D. Mass. 2017).

As a result of Plaintiffs' counsel efforts in prosecuting the first trial lasting nine days, this

Court found that the 2008 Boston police lieutenant's examination had an adverse impact on

minorities and was not valid for use in making promotions under Title VII and M.G.L. Chapter 151B.  After another three-day trial on remedy, this Court held that the City owed Plaintiffs back pay for the discrimination they suffered in the form of delayed or denied promotions.  In between those trials, the City twice attempted to appeal this Court's ruling on liability, which resulted in further briefing in this Court on the application of the First Circuit's decision in Lopez v. City of Lawrence, et al. on this Court's ruling against the City on liability.  Moreover, Plaintiffs could not have succeeded in this litigation without engaging several nationally-respected experts in the field of industrial psychology to present necessary opinions on the key issues in this case, including on the threshold issue of whether the adverse impact of the written promotional exam on minorities was statistically significant, whether the 2008 promotional examination met the requirements for validity pursuant to the Uniform Guidelines and the Society for Industrial and Organizational Psychology Principles for the Validation and Use of Personnel Selection Procedures, and whether there were less discriminatory alternatives to the written examination.  Finally, it is also apparent that as a result of this litigation the City of Boston will not revert to using the type of paper and pencil multiple-choice test for promotions that have plagued the city for 40 years, and resulted in the severe promotional disparities.

Now as the prevailing party in this case, pursuant to Title VII and M.G.L. Chapter 151B, the Court should now award Plaintiffs' counsel "a reasonable attorney's fee (including expert fees)" and reasonable costs.  Fontanillas-Lopez v. Morell Bauza Cartagena & Dapena, LLC, 832 F.3d 50, 59 (1st Cir. 2016); 42 U.S.C. § 2000e-5(k); M.G.L. ch. 151B, § 9.  When awarding fees under the state and federal civil rights statutes, the Court should keep in mind that "[t]he enforcement of [Title VII] by plaintiffs as private attorneys general is an important part of the underlying policy behind the law."  Bruce v. City of Gainesville, 177 F.3d 949, 952 (11th Cir.

2

1999); Kerr v. Quinn, 692 F.2d 875, 877 (2d Cir. 1982) ("The function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel."). The overarching purpose of the attorney's fees provision in civil rights legislation such as Title VII is "to ensure 'effective access to the judicial process' for persons with civil rights grievances," and to "encourag[e] the enforcement of federal law through lawsuits filed by private persons."[1] Diffenderfer v. Gomez-Colon, 587 F.3d 445, 455 (1st Cir. 2009). "[C]ourts should liberally interpret the statutory provision when contemplating an award of attorneys' fees to successful plaintiffs . . . in recognition of the Congressional policy of having Title VII enforced by individuals who act as private attorneys general."[2] Davis v. Braniff Airways, Inc., 468 F. Supp. 10, 13 (N.D. Tex. 1979) (citing Sagers v. Yellow Freight System, Inc., 529 F.2d 721 (5th Cir. 1976)). Moreover, the award of attorney's fees in Title VII cases "corrects a defect Congress identified in the market: '[T]he private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process' because '[t]hese victims ordinarily cannot afford to purchase legal services at the rates set out by the private market' and because the amount of damages in most civil rights suits is ordinarily too low to otherwise cover the cost of a lawyer." Diffenderfer, 587 F.3d at 455 (quoting City of Riverside v. Rivera, 477 U.S. 561, 576-77 (1986)). See also Newman v. Piggie Park Enter., Inc., 390 U.S.

---

[1] The "'standard for awarding attorneys'' fees is essentially the same under § 1988 and *384 § 2000e–5(k), as the provision for attorneys' fees under § 1988 was patterned after that in § 2000e–5(k).'" Howe v. City of Akron, 705 F. App'x 376, 383–84 (6th Cir. 2017) (quoting Virostek v. Liberty Twp. Police Dep't/Trs., 14 Fed.Appx. 493, 510 (6th Cir. 2001)).

[2] "It is intended that the amount of fees awarded under [Title VII] be governed by the same standards which prevail in other types of equally complex federal litigation such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature." Feher v. Dep't of Labor & Indus. Relations, 561 F. Supp. 757, 760 (D. Haw. 1983) (quoting S.Rep. No. 94–1011, p. 5 at 5913).

400, 402 (1968) ("If successful plaintiffs were routinely forced to bear their own attorney['s] fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts.").

In this case, Plaintiffs' counsel were able to secure an overwhelmingly positive result for Plaintiffs, but as the litigation history of this case and this Court's three well-considered opinions on liability and damages demonstrate, Plaintiffs' success required counsel to expend thousands of hours and generating more than $660,000 in expert fees. As is the case in most civil rights cases, the small group of 10 minority police officers who brought this successful challenge to the City's use of a discriminatory promotional exam could never have afforded to pay the related litigation costs. This was precisely the kind of case, therefore, where a small group have been able to further the public good even though the related litigation costs would have normally prevented them from bringing this case, much less litigate it for eight years. Moreover, as this court is acutely aware, this case was built on the foundation of the Lopez v. City of Lawrence, et al., Civil Action No. 07–11693 (D.Mass.) in which the same attorneys persevered through 18 days of trial, two trips to the First Circuit, and one half million dollars in costs, (which the firm paid out itself), only to lose 2 to 1 in the First Circuit (despite the US Justice Dept. filing an Amicus in support of reversal) and received no compensation for that five years of work.

Plaintiffs, therefore, now move for attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and M.G.L. Chapter 151B, § 9. As demonstrated below, Plaintiffs reasonable attorney's fees in this case total $1,027,015 and their reasonable costs (including expert fees) total $346,372.

In addition, because the entire transcript and exhibits were introduced by agreement of both parties from the trial of Lopez and both parties and the court relied on much of that trial

4

record in this case, plaintiffs seek a limited amount of fees and costs for the work done in that case. As demonstrated below, Plaintiffs' reasonable fees (after significant reductions) from Lopez include $661,170 in attorney's fees and $316,781 in expert fees.

As demonstrated below, the attorney's fees and costs (including expert fees) requested now by Plaintiffs are inherently reasonable given the amount of the time required to successfully litigate the case and the complicated subject matter Plaintiffs were required to present to the Court. Plaintiffs, therefore, respectfully request an award of fees in the amount of **$1,689,985** and an award of costs in the amount of **$665,359** for a total award of **$2,354,525**.

## I.    PLAINTIFFS ARE ENTITLED TO AN AWARD OF FEES AND COSTS AS PREVAILING PARTIES.

Prevailing parties are expressly authorized to seek attorneys' fees for successful claims under both Title VII and Chapter 151B of the Massachusetts General Laws. 42 U.S.C. § 2000e–5(k);[3] M.G.L. c. 151B, § 9.[4]  There can be no doubt that Plaintiffs are the prevailing party in this matter.  The term "prevailing parties" is broadly construed.  Truesdell v. Phila. Hous. Auth., 290 F.3d 159, 163 (3d Cir. 2002) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  To qualify as a "prevailing party," the plaintiff "must obtain an enforceable judgment" or comparable relief against the defendant.  Farrar, 506 U.S. at 111.  Moreover, a plaintiff need only obtain "some relief on the merits; nominal damages will suffice," to be considered the prevailing party.  System Mgmt., Inc. v. Loiselle, 154 F.Supp.2d 195, 200 (D.Mass.2001) (internal quotation marks omitted), rev'd on other grounds, 303 F.3d 100 (1st Cir.2002).  Plaintiffs brought their

---

[3]    "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs []."  42 U.S.C. § 2000e–5(k).

[4]    "If the court finds for petitioner it shall, in addition to any other relief and irrespective of the amount in controversy, award the petitioner reasonable attorney's fees and costs unless special circumstances would render such an award unjust."  M.G.L. ch. 151B, § 9.

claims for unlawful disparate impact racial discrimination under both Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §2000(e) and M.G.L. Chapter 151B.  ECF No. 289.  This Court

has now ruled in Plaintiffs favor on both claims on liability (ECF No. 199) and on damages (ECF

No. 306).

Moreover, there is a presumption that the Court should award reasonable fees and costs

to Plaintiffs as the prevailing party.  42 U.S.C. § 2000-5(k).[5]  Thus, a "prevailing party" in a civil

rights action "should ordinarily recover an attorney's fee unless special circumstances would

render such an award unjust."  Meagher v. Andover Sch. Comm., 2016 WL 70447, at *2 (D.

Mass. Jan. 6, 2016) (quoting Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)) (awarding fees

pursuant to Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988).  No such

special circumstances exist here.

## II.     THE AMOUNT OF AN AWARD OF FEES SHOULD BE CALCULATED BASED ON THE LODESTAR.

In the First Circuit, "[t]he lodestar approach is the method of choice for calculating fee

awards."  Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015); McDonough v. City of Quincy,

353 F.Supp.2d 179, 183 (D.Mass.2005) (applying the "lodestar method" in a Title VII attorneys'

fees and costs action).  "Under the "lodestar" paradigm, the court must determine a lodestar

figure by multiplying the number of hours productively expended by counsel by a reasonable

hourly rate."  Dixon v. Int'l Bhd. of Police Officers, 434 F. Supp. 2d 73, 78 (D. Mass. 2006)

(citing Hensley, 461 U.S. at 433).  This figure represents an initial estimate of reasonable fees

---

[5]     Meanwhile, pursuant to Chapter 151B, where a plaintiff prevails with a discrimination claim, the court "shall" make an award of costs and reasonable attorneys' fees.  M.G.L. c. 151B, § 9 ("If the court finds for the petitioner it shall, in addition to any other relief and irrespective of the amount in controversy, award the petitioner reasonable attorney's fees and costs unless special circumstances would render such an award unjust.").

which may be adjusted upward or downward on a case-by-case basis.[6]  Hensley, 461 U.S. at 434.

In fact, "[c]ourts in their discretion may increase the lodestar by applying a multiplier based on

factors such as the riskiness of the litigation and the quality of the attorneys."  Wal-Mart Stores,

Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005).

Moreover, an award of attorney's fees should not be reduced merely because it may

exceed the amount of Plaintiffs' damages.  See Krewson v. City of Quincy, 74 F.3d 15, 18 (1st

Cir. 1996) (collecting cases); Fontaine v. Ebtec Corp., 415 Mass. 309, 325 (1993) (determining

that in employment discrimination case, "fair market rates for time reasonably spent should be

the basis measure of reasonable fees, and should govern unless there are special reasons to depart

from them") (fee award pursuant to M.G.L . c. 151B, § 9).  Even where a court rejects some of

plaintiffs' legal theories, which was not the case here, this should not reduce the award of fees or

costs.  Isabel v. City of Memphis, 404 F.3d 404, 410–11 (6th Cir. 2005).

As the ruling in Lopez demonstrates, this litigation was inherently risky and the quality of

the attorneys in this case is evident from the extraordinary result they were able to secure for

Plaintiffs, including substantial compensation and the end to a reliance on the use of multiple-

choice written exams to make promotions in the Boston police department, given that the City

administered a multi-component exam in 2014 and plans to use such tests going forward.  As

demonstrated below, the hours billed and the rates for Plaintiffs' counsel are reasonable and

should be approved.

III.    **ALL REQUESTED HOURS CONSTITUTED "TIME REASONABLY SPENT" IN THIS CASE.**

---

[6]    The same is true under Massachusetts state law.  See Killeen v. Westban Hotel Venture, LP, 69 Mass. App. Ct. 784, 790  ("basic measure" for an award of fees is the lodestar, "which is the fair market rate for the time reasonably spent preparing and litigating a case."); Fontaine v. Ebtec Corp., 415 Mass. 309, 326 (1993) ("A fair market rate for time reasonably spent preparing and litigating a case is the basic measure of a reasonable attorney's fee under State law….").

Plaintiffs' counsel have logged 1,880.9 hours in litigating this case for eight years.  The amount of hours Plaintiffs' counsel spent on this case is inherently reasonable given that they were required to litigate two trials and a remand from the First Circuit.  Indeed, the hours in the case are far less than those logged by plaintiffs' counsel in other discrimination cases.  See, e.g., Stagi v. Nat'l R.R. Passenger Corp., 880 F. Supp. 2d 564, 572 (E.D. Pa. 2012) (in a Title VII litigation lasting nine years, the plaintiffs' counsel logged 3,095 hours); McClain v. Lufkin Indus., Inc., 519 F.3d 264, 284 (5th Cir. 2008) (in another discrimination case, plaintiffs' counsel logged over 12,000 hours in approximately 13 years of litigation); Luciano v. Olsten Corp., 109 F.3d 111, 114 (2d Cir. 1997) (in three years litigating sex discrimination claims, plaintiffs' counsel logged over 2,100 hours); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (finding over 3,000 hours billed in "relatively straightforward" sexual harassment case). See also Medoff v. CVS Caremark Corp., 2016 WL 632238, at *9 (D.R.I. Feb. 17, 2016) (plaintiffs' counsel logged 32,000 hours over seven years in securities class action).

When determining whether the time requested by a prevailing party is reasonable, "the trial court should start from the amount of time documented by the plaintiff's attorney and then decide whether these calculations are reasonable, taking into account the public interest in having persons with meritorious claims adequately represented." Krewson v. City of Quincy, 74 F.3d 15, 18 (1st Cir. 1996) (citing Stowe v. Bologna, 417 Mass. 199, 203 (1994)).

"In deciding whether the documented time was reasonably expended the judge may, in addition to considering the interests at stake, also consider many of the factors articulated in, i.e., the nature of the case and the issues presented, the time and labor required, the amount of damages involved, and the result obtained." Shirokov v. Dulap, Grubb & Weaver PLLC, 2014 WL 1271557, at *2 (D. Mass. Mar. 27, 2014) (quoting Linthicum v. Archambault, 379 Mass.

381, 388–389 (1979)).  In determining a fee award the court, "'should not only consider the plaintiff's financial interests at stake but also the plaintiff's other interests sought to be protected by the statute in question and the public interest in having persons with valid claims under the statute represented by competent legal counsel.'"  Id. (quoting Stowe, 629 N.E.2d at 307).

Here, all of the relevant factors weigh in favor of the requested award of fees.  Justice Neil  Gorsuch recently held that "few pieces of federal legislation rank in significance with" Title VII.  Bostock v. Clayton Cty., Georgia, 2020 WL 3146686, at *3 (U.S. June 15, 2020).  Indeed, this Court stated: "This is a profoundly important case, one that evokes the finest of our nation's aspirations to give everyone equal opportunity and a fair shot."  Smith v. City of Bos., 144 F. Supp. 3d 177, 180 (D. Mass. 2015), on reconsideration, 267 F. Supp. 3d 325 (D. Mass. 2017).  As the record shows, the successful litigation of this case required highly competent counsel and the use of multiple experts in the field of industrial psychology in multiple trials.

This lawsuit has been extensively litigated.  There was extensive pre-trial litigation.  Prior to trial, Plaintiffs were forced to file a motion to compel the Commonwealth to produce documents required by their experts(ECF No. 72); cross-motions for summary judgment (ECF Nos. 95, 101); and several motions in limine. (ECF Nos. 100, 110, 111).

On the issue of liability, this Court held a nine-day trial in December 2014 and January 2015.  Following trial, Plaintiffs submitted post-trial briefs on adverse impact, test validity, and less discriminatory alternatives, and responded to the City's post-trial briefs.  ECF Nos. 183, 191, 194.  The parties briefed the issue of damages (ECF Nos. 200, 204), and then agreed to be referred to the Magistrate for mediation.  ECF No. 212.  The parties met for mediation on April 26, 2016, and continued to attempt to mediate through June 2016, but no settlement was reached. ECF Nos. 217, 223.

Following the failed mediation, on June 21, 2016, the parties sought leave to file an interlocutory appeal so that the First Circuit could review this Court's ruling on liability, which this Court granted on July 7, 2016.  ECF Nos. 224, 228.  On October 11, 2016, the First Circuit denied the City's petition for interlocutory review without prejudice and with instructions for this Court to apply the First Circuit ruling in Lopez.  ECF No. 230.  Plaintiffs then briefed and argued the impact of the Lopez decision in this Court.  ECF Nos. 235, 241.

On July 26, 2017, this Court issued its ruling addressing the First Circuit's Lopez ruling and affirming its own finding of liability against the City.  ECF No. 245.  Again, the parties agreed to interlocutory review, briefed the City's petition for interlocutory review with the First Circuit, and on April 17, 2019, the First Circuit denied the City's petition.  ECF No. 250.

Following that, the parties filed pre-trial briefs on damages and, from October 28, 2019 to October 30, 2019, the parties held a three-day trial on the issue of damages.

Both trials required extensive preparation, including sifting through thousands of pages of discovery obtained from the Commonwealth and preparing expert reports from Joel Wiesen and Leaetta Hough.  Plaintiffs were also required to depose both of the City's experts, Jacinto Silva and Michael Champion.

Plaintiffs' counsel efforts won significant backpay totaling nearly $500,000 for 10 individuals.  Furthermore, the impact of this case has been profound.  As a result of this litigation, the City used a multi-component promotional examination in 2014, will be using a multi-component test for the next promotional examination, and appears to be committed to not using the multiple-choice again in the future.  Moreover, due to the outcome in this case, it is unlikely that any large City in Massachusetts will ever again use rank-ordered pen and pencil tests for promotions.  The state will be better off as a result.

10

Here, as set forth in the time records submitted by Plaintiffs' counsel, Attorney Lichten spent 662.9 hours on this case from 2012 to the present,[7] Attorney Weber logged 780.6 hours from 2012 to the present, and Attorney Rubin has logged 195.7 hours litigating this case. See Decl. of Harold Lichten at ¶ 17 (attached as Ex. A). Furthermore, Attorney Churchill logged 241.7 hours in this case from 2012 to the present. See Affidavit of Stephen Churchill at ¶ 11 (attached as Ex. B).

As stated above, the starting point for any award of attorney's fees is the number of hours records by the plaintiffs' counsel. Dixon, 434 F. Supp. 2d at 78. Indeed, if anything, these records understate the time spent on Plaintiffs' case, because there are numerous occasions when time spent on the case – such as a quick phone call or e-mail, time spent thinking about litigation

---

[7]   While Plaintiffs have produced contemporaneous time records for nearly all of their time, Attorney Lichten stopped keeping contemporaneous time records in late 2015. While he has logged 388 hours for this case, he very conservatively estimates, based on his calendars and emails that he has spent an additional 274 hours litigating this case since 2015. Generally, the absence of an attorney's contemporaneous time records does not by itself support a reduction in calculating their fee award. Johnson v. University College of the University of Alabama, 706 F.2d 1205, 1207 (11th Cir.1983) (in proceeding for attorneys' fees under Title 42 United States Code, Section 1988, "lack of contemporaneous records does not justify an automatic reduction in the hours claimed"); Grant v. George Schumann Tire & Battery Co., 908 F.2d 874, 878 (11th Cir. 1990) (accord); Brinskele v. United States, 2014 WL 4832263, *2 (N.D. Cal. May 22, 2014) ("[b]ased upon the court's familiarity with this litigation and counsel's work, the court is able to assess the reasonableness of the hours claimed by counsel without the need to inspect contemporaneous time records.") (report and recommendation adopted, 2014 WL 4826153 (N.D. Cal. Sept. 29, 2014). As this Court has held, it does not require contemporaneous time records "in situations where fairness dictates another course." Awuah v. Coverall N. Am., Inc., 791 F. Supp. 2d 284, 289 (D. Mass. 2011) (citing Grendel's Den, 749 F.2d at 952). This includes cases where this "Court has a unique vantage point from which it has observed this case and possesses 'intimate knowledge of the nuances of the underlying case.'" Id. (quoting Rossello–Gonzalez v. Acevedo–Vila, 483 F.3d 1, 6 (1st Cir.2007)). This Court did just that in Awuah, when granting attorney's fees to Attorney Lichten's partner, Shannon Liss-Riordan without reduction. Id. Attorney Lichten's 273 hours spent over five years from 2015 to the present, which includes briefing on reconsideration and a three-day trial on damages is inherently reasonable. Thus, Attorney Lichten should be awarded fees for this time even though he did not keep contemporaneous records.

or trial strategy, or time spent on administrative tasks – was not reflected in billing records. Lichten Decl. at ¶ 18.

Second, the public interest in having competent counsel represent plaintiffs with discrimination cases is substantial. In fact, the "function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." Kerr v. Quinn, 692 F.2d 875, 877 (2d Cir. 1982). As the First Circuit held, the overarching purpose of the attorney's fees provision in civil rights legislation such as Title VII is "to ensure 'effective access to the judicial process' for persons with civil rights grievances," and to "encourag[e] the enforcement of federal law through lawsuits filed by private persons." Diffenderfer v. Gomez-Colon, 587 F.3d 445, 455 (1st Cir. 2009). Thus, Plaintiffs' counsel's representation of the Plaintiffs in this case served the public interest.

Furthermore, there can be no doubt the number of hours recorded by Plaintiffs' counsel are inherently reasonable given the substantial litigation required in this case and the substantial amount of the damages totaling $484,866 won for the Plaintiffs.

To the extent that Defendants wish to now, after the fact, nitpick through Plaintiffs' counsel's time records and argue that what took an hour should only have taken 45 minutes, such arguments should be rejected by this court. As the Ninth Circuit pointed out in Moreno v. County of Sacramento, 534 F.3d 1106 (9th Cir. 2008), courts should keep "in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much

12

time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." Id. at 1112. See also Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (the defendant's argument "succeeds only if we were to engage in an ex post facto determination of whether attorney hours were necessary to the relief obtained. The relevant issue, however, is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures").

Along the same lines, the City cannot now argue that Plaintiffs' counsel's hours are not reasonable because some aspects of the case, such as drafting briefs, required the work of two or three attorneys. "There is no hard-and-fast rule as to how many lawyers can be at a meeting or how many hours lawyers can spend discussing a project." Gautreaux v. Chi. Hous. Auth., 491 F.3d 649, 661 (7th Cir. 2007). But, in general, "[t]alking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney trying to wade through an issue alone."[8] Tchemkou v. Mukasey, 517 F.3d 506, 511-12 (7th Cir. 2008).

The hours expended here were necessary where the City vigorously contested the litigation for eight years. "Since a litigant's staffing needs often vary in direct proportion to the ferocity of her adversaries' handling of the case, this factor weighs heavily in the balance." Lipsett, 975 F.2d at 939. See also City of Riverside v. Rivera, 477 U.S. 561, 580 n. 11 (1986) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."). Here, the City insisted on continuing to litigate

---

[8]   Moreover, Plaintiffs' counsel should be permitted to recover for time spent preparing their motion for attorney's fees. Stratos v. Department of Pub. Welfare, 387 Mass. 312, 325 (1982) (time spent in establishing and defending attorney's fees, or objecting to unduly small award, should be included in final calculation of award).

this case for five years <u>after</u> a ruling in Plaintiffs' favor a trial on liability.  The City cannot argue now that Plaintiffs' work was unnecessary or unreasonable.

**IV.     THE FAIR MARKET RATE FOR PLAINTIFFS' COUNSEL IS $700 PER HOUR FOR ATTORNEY LICHTEN, $600 PER HOUR FOR ATTORNEY CHURCHILL, $450 PER HOUR FOR ATTORNEY WEBER, AND $350 PER HOUR FOR ATTORNEY RUBIN.**

"Reasonable hourly rates will vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria."  <u>U.S. v. One Star Class Sloop Sailboat</u>, 546 F.3d 26, 38 (1st Cir. 2008).  A reasonable hourly rate is "calculated on the basis of rates and practices prevailing in the market, i.e., in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation, and one that grants the successful civil rights plaintiff a fully compensatory fee, comparable to what is traditional with attorneys compensated by fee-paying clients."  <u>Foster v. Kings Park School Dist.</u>, 174 F.R.D. 19, 26-27 (E.D.N.Y. 1997) (quoting <u>Missouri v. Jenkins</u>, 491 U.S. 274, 286 (1989)).  In addition, this Court may consider Plaintiffs' counsel's "reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases."[9] <u>Toledo v. Vioss Vision, Inc.</u>, 2019 WL 5689246, at *2 (S.D. Fla. Oct. 31, 2019).  In <u>Blum v. Stevenson</u>, 465 U.S. 886 (1984), the Supreme Court addressed Congress' intent concerning the hourly rate for attorneys who are entitled to fee awards in civil rights cases, and stated, "[i]t is intended that the amount of fees awarded under [§ 1988] be governed by the same standards

---

[9]     Moreover, "current rather than historic rates should be utilized to account for the delay between the date services were rendered and when fees can be recovered." <u>Rozell v. Ross-Holst</u>, 576 F. Supp. 2d 527, 545 (S.D.N.Y. 2008) (citing <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 882 (2d Cir.1998)).

which prevail in other types of equally complex Federal litigation, such as antitrust cases[,] …"[10]

Id. at 895-97 (emphasis supplied).

Courts have routinely awarded fees in line with those requested in this case.  For

example, in 2009, this Court awarded $735 for a partner and $495 for an associate in a hostile

work environment case.  Tuli v. Brigham & Women's Hosp., Inc., No. 07CV12338-NG, 2009

WL 10693567, at *2 (D. Mass. June 8, 2009), aff'd sub nom. Tuli v. Brigham & Women's Hosp.,

656 F.3d 33 (1st Cir. 2011).  Furthermore, another plaintiff-side law firm with credentials similar

to Plaintiffs' counsel, Outten & Golden, is routinely awarded rates in employment discrimination

cases even higher than those requested here.  See, e.g., Williams v. Metro-N. R.R. Co., 2018 WL

3370678, at *8 (S.D.N.Y. June 28, 2018), report and recommendation adopted, No. 17 CIV.

3847 (JGK), 2018 WL 3368713 (S.D.N.Y. July 10, 2018) (approving hourly rate of $800 for

senior partners); Houser v. Pritzker, No. 10-cv-3105, ECF No. 377 (S.D.N.Y. Sept. 20, 2016)

(awarding hourly rates of $875 for partner, $850 for a senior counsel, $450 for an eighth year

associate); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (approving rates of

$600 for partners and $350 for associates in sexual discrimination lawsuit resolved in 2008).

Other attorneys based in Boston are also routinely awarded fees similar to those

requested here.  Indeed, in another discrimination case, Riley v. Mass. Dept. of State Police,

2019 WL 4973956 (D. Mass. Oct. 8, 2019), the district court awarded $525 to $600 per hour for

experienced plaintiff-side employment attorneys.  Churchill Aff. at ¶ 9.  That award was

supported by affidavit testimony from five experienced Boston attorneys who testified that

experienced employment attorneys charge or have been awarded feed in the range of $500 to

---

[10]    Another court recently approved hourly rate of $770 for a partner and $500 for associates in the successful defense against antitrust claims.  Val v. BMO Harris, N.A., 2017 WL 4265715, at *2 (N.D. Ill. Sept. 26, 2017).

$800 per hour.[11]  Id. at ¶ 9, Ex. 1.  Moreover, Attorney Lichten's partner, Shannon Liss-Riordan, has customarily been approved at the rate of over $800 per hour in class action employment cases.  See, e.g., O'Connor v. Uber Techs., Inc., 2019 WL 4394401, at *8 (N.D. Cal. Sept. 13, 2019) (approving hourly rate of $850 per hour for Attorney Liss-Riordan and $450 per hour for Attorney Weber); Cotter v. Lyft Inc., 2017 WL 1033527 (N.D. Cal. Mar. 16, 2017) (ECF No. 310) (approving hourly rate of $800 for Attorney Liss-Riordan); In Re Caviar, Inc., JAMS Ref. No. 1100082951 (same); Tang, et al. v. Shyp, Inc., JAMS Ref. No. 01-15-0004-0358; Reid v. Postmates, Inc., JAMS Ref. No. 1100081502 (same).

Harold Lichten is a 1977 graduate of New York University School of Law and has been practicing law for over 42 years.  Lichten Decl. at ¶ 3.  Attorney Lichten has spent most of his career advocating for worker's rights and has argued many of the landmark cases applying Massachusetts employment law in both state and federal court.  Id. at ¶¶ 4-13.

More importantly, Attorney Lichten has spent much of the past 30 years litigating against discriminatory hiring and promotional practices in Massachusetts police and fire departments. Lichten Decl. at ¶ 4-6.  Starting in 1988, Attorney Lichten represented a police officer who took the Boston Police lieutenants' examination and, hiring an expert, convinced the Civil Service Commission and the Massachusetts Court of Appeals to hold that a written multiple choice exam, which failed to test for supervisory skills, violates the statutory requirement of the Civil Service Law.  Lichten Decl. at ¶ 4 (discussing Carr v. Department of Personnel Administration, No. G-1461 (Mass. Civil Serv. Comm'n Dec. 21, 1989); Police Superior Officers Federation v. City of Boston, 35 Mass. App. Ct. 688, 693-94 (1993)).  It was apparent at that time that a more

---

[11]     Further, in 2015, this Court found that a rate of $425 per hour was reasonable in a much simpler case for Attorney Churchill given his experience litigating on employment issues. Carpaneda v. Domino's Pizza, Inc., 89 F. Supp. 3d 219, 229 (D. Mass. 2015).

widespread challenge to the use of written exams by police and fire departments across the Commonwealth would first require the removal of consent decrees entered in the 1970s to increase diversity, but which resulted in unconstitutional reverse discrimination.  In 2003, Attorney Lichten began the work of removing the consent decrees by representing white police officers in a reverse-discrimination case.  See Deleo v. City of Bos., Mass., No. CIV.A.03-12538-PBS (D. Mass.).  After that, he represented a group of white firefighters in another reverse-discrimination case that led to the First Circuit striking down Boston's 30-year-old hiring system for fire fighters as discriminatory.  Quinn v. City of Boston, 325 F.3d 18 (1st Cir. 2003). Lichten Decl. at ¶ 5.

Following those rulings, Attorney Lichten brought a string of cases on behalf of minorities challenging the use of written entry-level and promotional examinations as discriminatory in violation of Title VII and M.G.L. c. 151B.  Id. at ¶ 6-9.  Attorney Lichten successfully litigated a bench trial in Bradley v. City of Lynn, 443 F. Supp. 2d 145, 148 (D. Mass. 2006) on behalf of a group of minority firefighters challenging the use of an entry-level written civil service cognitive ability examination used in 2002 and 2004 to qualify and rank applicants.

Most relevant to this case, Attorney Lichten and Attorney Churchill litigated Lopez v. City of Lawrence, et al., Civil Action No. 07–11693 (D.Mass.), challenging the police sergeant's exam use by Massachusetts municipalities including the City of Boston.  In addition, Attorney Lichten represents minority officers with claims against the Commonwealth's Human Resources Division in a challenge to the sergeant's exam that is still pending in state court.  Lichten Decl. at ¶ 8; Tatum v. Com., Appeal No. 2019-P-0835 (Mass. App. Ct.).

As a result of his background, lengthy experience, and accomplishments in the area of employment law, Attorney Lichten has twice been named among the Massachusetts Lawyers Weekly's Lawyers of the Year. Id. at ¶ 14. In fact, he was named the 2015 Lawyers of the Year for the work he and Attorney Churchill performed during the first trial on liability held in this case. Id. at ¶ 14.

As demonstrated above, an hourly rate of $700 for a law partner with 42 years of litigation experience, including over 30 years of litigating the issue of discrimination in police and fire entrance and promotional exams, is reasonable and should be approved by the Court.

Stephen Churchill is a 1993 graduate of Harvard Law School and has been practicing employment law for over 25 years. Affidavit of Stephen Churchill at ¶¶ 1-2 (Ex. B). Since 2007, he has served on the faculty of Harvard Law School, teaching two courses on employment law and directing the employment law clinic. Churchill Aff. ¶ 2. He has been counsel on numerous reported cases, in both state and federal court, obtaining favorable outcomes for both employers and employees. Churchill Aff. ¶ 4. Mr. Churchill also has served as a speaker or moderator on numerous occasions, and has authored a number of papers on employment law issues. Churchill Aff. ¶¶ 5-6. In addition, Attorney Churchill has been named a Top 100 Massachusetts Super Lawyer every year for the past seven years and was honored as a 2019 Lawyer of the Year by Massachusetts Lawyers Weekly. Id. at ¶ 6. As demonstrated above, an hourly rate of $600 is reasonable for a law partner and Harvard Law School lecturer-at-law with over 25 years of experience in discrimination cases is reasonable. Thus, this Court should approve fees to Attorney Churchill at a rate of $600 per hour.

Benjamin Weber is a 2005 graduate of the University of Iowa College of Law and has been practicing last for 15 years, having spent 12 of those years litigating exclusively on

worker's rights cases.  Lichten Decl. at ¶ 15.  After working as an associate at Lichten & Liss-Riordan, P.C. for six years, he is currently Of Counsel at the firm and runs his own law practice. Id.  Based on his 15 years of litigation experience, the fair market rate for Attorney Weber is $450 per hour.[12]

Zach Rubin received his undergraduate degree from Cornell University and his law degree from Brooklyn Law School in 2015.  Lichten Decl. at ¶ 16.  His entire legal career has been devoted to the representation of workers in employment law matters.  Id.  In Awuah v. Coverall North America, Inc., 791 F. Supp. 2d 284 (D.Mass. 2011), this Court awarded an associate at Lichten & Liss-Riordan, P.C. with only two years of experience $200 per hour.  A fair market rate of $350 is reasonable, given that Rubin attended an Ivy League college, has five years of litigation experience, and nine years has passed since the award in Awuah.

For the reasons stated above, there is ample support to find that the requested hourly rates of $700 for Attorney Lichten, $600 for Attorney Churchill, $450 for Attorney Weber, and $350 for Attorney Rubin constitute fair market rates.[13]

---

[12]     Courts have approved requested attorney's fees of $300 to $450 per hour for Attorney Weber in wage and hour settlements.  See, e.g., DaSilva v. Border Transfer of MA, Inc., No. 16-11205-PBS (D. Mass. Oct. 16, 2019) (ECF No. 189) (approving fees based on hourly rate of $350 per hour for Attorney Weber); Thomas v. Chenega Infinity, LLC, No. 18-00978-PGB-DCI (M.D. Fla. Jan. 9, 2020) (ECF No. 75) (finding hourly rate of $400 per hour for Attorney Weber reasonable); O'Connor v. Uber Techs., Inc., 2019 WL 4394401, at *8 (N.D. Cal. Sept. 13, 2019) (approving $450 per hour for Attorney Weber); Williams v. King Bee Delivery, LLC, No. 15-306 (E.D. Ky. Dec. 20, 2018) (ECF No. 110); Oxford v. Broadband Installations of Iowa, No. 17-178 (S.D. Ia. Aug. 31, 2018) (ECF No. 109); Kephart v. BeavEx, Inc., No. 12-07843 (N.D. Ill. June 4, 2018) (ECF. No. 227); Beasley v. Custom Communications, Inc., No. 15-583 (E.D.N.C. Oct. 24, 2017) (ECF No. 116); Parra v. HEI, Inc., No. 10043375 (17th Cir. Ct. Fla. Oct. 18, 2017); Martins v. 3PD, Inc., No. 11-11313 (D. Mass. March 2, 2016) (ECF No. 209); Brandon v. 3PD, Inc., No. 13-3745 (N.D. Ill. Jan. 26, 2016) (ECF No. 151).

[13]     Moreover, a local survey conducted in 2013, found that hourly rates for attorney's located in Boston exceeded the national average with partners charging an average hourly rate of $598.69 and associates an hourly rate of $388.21.  See https://masslawyersweekly.com /2013/10/11/the-going-rates/ (attached as Ex. D).

This Court, therefore, should approve the reasonable amount of hours and the reasonable hourly rates now requested by Plaintiffs' counsel as summarized below and award Plaintiffs' counsel $1,028,815 in attorney's fees related to litigation and trial of this case.

**Summary of Smith Attorney's Fees**

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Harold Lichten | 662.9 | $700 | $464,030 |
| Stephen Churchill | 241.7 | $600 | $145,020 |
| Benjamin Weber | 780.6 | $450 | $351,270 |
| Zach Rubin | 195.7 | $350 | $68,495 |
| **Totals** | **1,880.9** | | **$1,028,815** |

## V.    PLAINTIFFS ARE ENTITLED TO AN AWARD OF COSTS.

A fee award under Title VII also includes expert fees and "reasonable out-of-pocket expenses" incurred by the attorneys that are "ordinarily charged to their clients." Port Auth. Police Asian Jade Soc. of New York & New Jersey Inc. v. Port Auth. of New York & New Jersey, 706 F. Supp. 2d 537, 542 (S.D.N.Y. 2010); 42 U.S.C. § 2000e-5(k).  Plaintiffs are also entitled to recover their costs under M.G.L. c. 151B, § 9.  As demonstrated below, Plaintiffs incurred $324,020 in expert fees and $24,738 in other costs in this case.  See Lichten Decl. at ¶ 19; Decl. of Rebecca Nelligan at ¶¶ 4-6 (attached as Ex. C); Churchill Decl. at ¶ 13.  This Court, therefore, should award Plaintiffs' counsel **$348,758** in costs related directly to trial in this case.

Much of Plaintiffs' costs in this case related to the testimony of their two experts, Dr. Joel Wiesen and Dr. Leaetta Hough.  The Court admitted Dr. Wiesen's expert report on adverse impact and his rebuttal to the City's expert, Dr. Campion, on the validity of the exam.  See Ex.

47, Adverse Impact Evaluation: 2008 and 2005 Exams Promotion Lieutenant, BPD ("Wiesen Report"); Ex. 49, Rebuttal Dr. Campion's Report Validity Alternatives 2008 and 2005 Exams ("Wiesen Rebuttal"). This Court did not only admit Dr. Wiesen's reports, in ruling in Plaintiffs' favor on liability, the Court stated that it was persuaded by Dr. Wiesen's testimony when it concluded that Plaintiffs met their burden of showing that minorities had suffered a disparate impact as a result of the 2008 lieutenant's exam. See Order at p. 49-50. In addition, the Court sided with Dr. Wiesen when it held that the 2008 exam was not valid. Order at p. 79. Furthermore, Dr. Wiesen's testimony in this case formed the basis of this Court's opinion that it was not required to follow Judge O'Toole's conclusion in the Lopez case that the sergeant's exam was valid. See Order at p. 79, n. 42. The Court also admitted the expert report of Plaintiffs' other expert, Dr. Leaetta Hough, (Ex. 83) and heard her testimony. See Tr. 1/06/15.

In addition to their expert fees, Plaintiffs are entitled to recover their reasonable costs related courts costs, deposition fees, and copying costs, which total $24,738.[14] Decl. of Rebecca Nelligan at ¶ 6; Churchill Aff. at ¶ 13.

---

[14] Similarly, under Federal Rule of Civil Procedure 54, costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Rule 54 creates a presumption in favor of awarding costs to the prevailing party. See Ass'n of Mexican–Am. Educators v. California, 231 F.3d 572, 591 (9th Cir. 2000). "[I]f a district court wishes to depart from that presumption, it must explain why so that the appellate court will be able to determine whether or not the trial court abused its discretion ... [and] explain why a case is not ordinary." The Supreme Court has held that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d)." Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987). Section 1920 provides that a judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

As demonstrated in the attached documents, Plaintiffs' counsel incurred costs of **$348,758** for expert fees, costs of filing, and deposition transcripts.  Lichten Decl. at ¶ 19; Churchill Aff. at ¶ 13 and those costs must now be awarded to Plaintiffs' counsel.

## VI.    PLAINTIFFS ARE FURTHER ENTITLED TO RECOVER FEES AND COSTS RELATED TO THE <u>LOPEZ</u> CASE.

Prior to the filing of this case, Plaintiffs' counsel litigated nearly the same issues (with many of the same experts) regarding the Boston police sergeant's promotional examination in the <u>Lopez</u> case.  The evidence obtained in the <u>Lopez</u> litigation was admitted in this case and helped form the basis of this Court's rulings in Plaintiffs' favor.  Indeed, as this Court held in this case, "[a]s there is some factual overlap, on the first trial day in this case, without objection, this Court admitted in evidence all the trial testimony and exhibits from <u>Lopez</u>."  Order at p. 13 (citing 12/15/14 Tr. 32:4-16).

In <u>Lopez</u>, both the plaintiffs and the City produced testimony and reports regarding the validity of written multiple-choice promotional examinations and their expected adverse impact on minorities.  Finding that the 2008 lieutenant's examination was not valid, this Court's opinion repeatedly relies on evidence from the <u>Lopez</u> case.  For example, this Court relied on the excerpt testimony provided in the <u>Lopez</u> case for the proposition that "Experts for both sides testified to the phenomenon of written multiple-choice tests producing high levels of adverse impact on minority candidates."  Order at p. 44-45 (citing <u>Lopez</u>, 07/13/10 Tr. 82-85; <u>Lopez</u>, 07/14/10 Tr. 43-48, 55, 59-60; <u>Lopez</u>, 07/26/10 Tr. 30; <u>Lopez</u>, 09/15/10 Tr. 58-59; <u>Lopez</u>, 09/16/10 Tr. 110).

---

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. 28 U.S.C. § 1920.

Moreover, as this Court found, the validity of the 2008 lieutenant's examination was undercut by the fact that the City's own expert recommended that the results of the 2008 test be banded.  Order at p. 77 (Lopez, Exs. 70-71) ("Further undercutting a finding of reliability is the fact that Dr. Jacobs (of EB Jacobs), recommended in 2009 that the City 'band' the results of the 2008 exam in nine-point increments because 'a given candidate's score will vary from one administration of a test to another.'").

Moreover, the testimony Plaintiffs' counsel procured from the City's own expert, Dr. James Outtz, in the Lopez trial plainly affected the outcome of this case in Plaintiffs' favor. Most importantly, Dr. Outtz admitted during the Lopez trial that the test for sergeant was not valid, because it did not test for a representative sample of the skills and abilities necessary, but with the addition of the E&E component it was "minimally valid."  As this Court summarized the ruling in Lopez: "Agreeing with the City's expert, Judge O'Toole held that, but for the E&E component, the 2005 and 2008 sergeants' exams would not have passed muster under Title VII."[15]  Order at p. 79, n. 42 (citing Lopez Order at 35-36).  Relying at least in part on Dr. Outtz's admission, this Court held that it "arrives at a different holding in large part because the Court does not place as much stock in the E&E component as did Judge O'Toole."  Id.  Thus Dr. Outtz's testimony in Lopez was an important factor in the outcome in this case.[16]

---

[15]     In addition, this Court looked at evidence produced in Lopez to determine that the Education and Experience score given to applicants was sufficiently related to the knowledge, skills, and abilities of the lieutenant's position.  See Order at p. 79, n. 42 ("While SMEs did assist DPA in evaluating and developing the E&E component, there is no evidence linking the E&E inputs with tasks or KSAs from the job analyses. Lopez, Ex. 41 Apps. W and X.").

[16]     Moreover, while the City attempted to rely on the 1991 Validation Report, Dr. Outtz himself testified that the report could not be relied on to support the validity of the 2008 examination because, as he testified in Lopez, a job analysis' usefulness is only "five to eight years if the job doesn't change."  See Lopez Tr. 14:36.  Accordingly, this Court held that the City "cannot establish validity by relying on the 1991 validation study; the study was conducted

Further, evidence produced in <u>Lopez</u> showed that the City's own former police commissioner, Paul Evans, did not believe the exam results were a good predictor of future job performance, undercutting the exam's validity.  <u>See</u> Order at p. 60, n. 31 ("Commissioner Paul Evans (coincidentally, the brother of the current Commissioner) expressed his opinion in a memo that 'the best indicator of future performance is past performance . . . . The best supervisors cannot always be identified solely by their performance on a written test and an hour in an assessment center. . . . We must become willing to reward police work, not memorization skills.'") (citing <u>Lopez</u>, Ex. 194).

Furthermore, evidence produced in <u>Lopez</u> bolstered Plaintiffs' claims that the City of Boston could use a more valid, multi-component test by showing that the City had used a multi-component examination in 2002 to increase diversity and that the exam was only discontinued because of financial constraints, and not because it failed to accomplish its goal.  <u>See</u> Order at p. 22, n. 14 (citing <u>Lopez</u> 07/27/10 Trial Tr. 100); Order at p. 23 (citing <u>Lopez</u> 07/28/10 Tr. 17, 30).

Courts have allowed prevailing parties to recover fees incurred in "related" proceedings. <u>Lundin v. Mecham</u>, 980 F.2d 1450, 1462 (D.C. Cir. 1992) ("recovery has been allowed for fees incurred in agency proceedings <u>related</u> to a suit in federal court") (citing <u>Sullivan v. Hudson</u>, 490 U.S. 877, 892 (1989) ("administrative proceedings may be so intimately connected with judicial proceedings as to be considered part of the 'civil action' for purposes of a fee award"). Similarly, in <u>Bartholomew v. Watson</u>, 665 F.2d 910, 914 (9th Cir.1982), the Ninth Circuit held that fees incurred in a state court proceeding following the federal court's <u>Pullman</u> abstention were recoverable under 42 U.S.C. § 1988.

---

seventeen years before the 2008 exam and experts generally agree that validity studies should be conducted every five to eight years."  Order at p. 68, n. 36.

Plaintiffs do not seek all of their fees and costs in the Lopez litigation.  Rather, Plaintiffs now seek only the portion of their fees costs that are directly related to this case and relied upon by this Court in reaching its decision.  This would exclude the litigation of claims against the Commonwealth, which were litigated at the First Circuit and the Supreme Judicial Court, and litigation of claims against the other municipalities.  Moreover, Plaintiffs have excluded hours related to the appeal of the Lopez decision to the First Circuit and all costs unrelated to the expert testimony that this Court relied on here.  Thus, even though Plaintiffs' counsel logged over 3,500 hours on the Lopez case, the lodestar for the award they seek is based only on the 1,176 hours that led to the production of evidence directly relevant to this matter and which the Court was able to rely on in finding in Plaintiffs' favor.

Finally, because the Lopez trial finished in 2011, Plaintiffs seek a reduced hourly rate of $600 for Attorney Lichten and $500 for Attorney Churchill based on their experience at that time.  Thus, Plaintiffs' counsel should be awarded for fees related to the Lopez trial in the following amounts:

**Summary of Lopez Attorney's Fees**

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Harold Lichten | 728.7 | $600 | $437,220 |
| Stephen Churchill | 447.9 | $500 | $223,950 |
| **Totals** | **1,176.6** | | **$661,170** |

In addition, Plaintiffs' counsel incurred $316,781 in expert fees in bringing forward expert testimony in the Lopez case.  Decl. of Rebecca Nelligan at ¶¶ 7-9.  The expert testimony in Lopez helped explain how the City of Boston developed its promotional examinations in prior

years and whether these written examinations were valid for use as rank order devices under the Uniform Guidelines.  Moreover, the expert evidence produced in <u>Lopez</u> was invaluable to Plaintiffs' counsel in litigating this lawsuit and, as discussed above, was also admitted in by this Court as evidence in this case.  Thus, Plaintiffs seek an additional $316,781.07 in expert fees Plaintiffs' counsel paid in the <u>Lopez</u> litigation.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court award them attorneys' fees in the amount of in the amount of $1,689,985, and an award of costs in the amount of $665,539.

### Final Summary of Plaintiffs' Fees and Costs

| | |
|---|---|
| Smith Attorney's Fees | $1,028,815 |
| Smith Costs (Including Expert Fees) | $348,758.89 |
| Lopez Attorney's Fees | $661,170 |
| Lopez Expert Fees | $316,781.07 |
| **Total** | **$2,354,525.96** |

Respectfully submitted,

BRUCE SMITH, et al.
By their attorneys,


/s/ Harold Lichten
Harold Lichten, BBO#549689
Benjamin Weber, BBO#673736
Zach Rubin, BBO#704485
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02114

(617) 994-5800
hlichten@llrlaw.com
bjweber@llrlaw.com
zrubin@llrlaw.com

Stephen Churchill, BBO# 564158
Fair Work, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3262
steve@fairworklaw.com

DATED:  June 26, 2020

27

## CERTIFICATE OF CONFERENCE

I certify that, on June 26, 2020, Plaintiffs conferred with counsel for Defendant and were informed that Defendant would not assent to Plaintiffs' petition for attorney's fees and costs.

DATED: June 26, 2020                                    /s/ Harold L. Lichten
                                                        Harold L. Lichten

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document has been served on counsel for all parties through the ECF system on this date.

DATED: June 26, 2020                                    /s/ Harold L. Lichten
                                                        Harold L. Lichten

28