UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                    )
BRUCE SMITH, PAUL JOSEPH, JOHN M.   )
JOHNSON, ROBERT TINKER, MARTIN      )
JOSEPH, KIM GADDY, BRIAN KEITH      )
LATSON, LEIGHTON FACEY, KENNETH     )
SOUSA, WILLIAM WOODLEY, MARWAN      )
MOSS, and LATEISHA ADAMS,           )
                                    )
                Plaintiffs,         )
                                    )        CIVIL ACTION
        v.                          )        NO. 12-10291-WGY
                                    )
CITY OF BOSTON,                     )
                                    )
                Defendant.          )
_____)
```

YOUNG, D.J.                                    October 26, 2020

**MEMORANDUM & ORDER**

**I.   INTRODUCTION**

This is a disparate impact civil rights case.  After
lengthy, complex, and extensive proceedings before the district
court and First Circuit, this Court ruled in favor of the
police-officer plaintiffs (the "Officers") against the City of
Boston ("Boston") on their Title VII disparate impact claim
arising from the 2008 lieutenants' promotional exam, and awarded
them damages in the form of back pay and interest totaling
$484,865.  ECF No. 308; see also Smith v. City of Boston (Smith
I), 144 F. Supp. 3d 177 (D. Mass. 2015); Smith v. City of Boston

(Smith II), 267 F. Supp. 3d 325 (D. Mass. 2017).   Pursuant to

Title VII of the Civil Rights Act and Chapter 151B of

Massachusetts General laws, the Officers requested the award of

attorney's fees in the amount of $1,689,985 and costs in the

amount of $665,359, for a total request of $2,355,344.[1]   Pls.'

Pet. Att'ys Fees & Costs ("Pls.' Pet.") 1, 5, 26, ECF No. 309.

The Court here rules that the Officers are entitled to

attorneys' fees in the amount of $607,272.80, and costs in the

amount of $346,372.00.

**A. Procedural History**

This case commenced in February 2012.   ECF No. 1.   The

parties litigated the partial dismissal of the complaint, the

issue of certificating a class, as well the cross-motions for

summary judgement.   ECF Nos. 28, 67, 70, 89, 94, 120, 255, 264.

The Court bifurcated the case into liability and damages phases.

ECF No. 98.

From a trial that lasted nine days, ECF Nos. 146-57, this

Court ruled in 2015 in Smith I that Boston's 2008 lieutenants'

---

[1] The Officers calculate this total as $2,354,525, but this
Court had conducted its own independent calculations, which
include using a figure for costs incurred of $663,153.   Pl.'s
Mot. 4-5.   The Officers' attorneys in their Reply additionally
subtracted 6.2 hours from their original request, as this was
work done by attorneys other than the four staffed to this case.
Pls.' Pet. 26; Reply Supp. Pls.' Pet. Att'ys Fees ("Pls.'
Reply") 9, ECF No. 321.   This Court is not awarding the
Officers' requested fee, so calculating the effect of these
modifications would be merely academic.

exam had a disparate impact on minority candidates and lacked
job-relatedness, in violation of Title VII of the Civil Rights
Act and its Massachusetts analogue, Chapter 151B.  ECF No. 199.
Soon after, the First Circuit in Lopez v. City of Lawrence,
affirmed Judge O'Toole's rejection of a similar claim by
plaintiffs challenging Boston's 2008 sergeants' promotional
exam.  823 F.3d 102 (1st Cir. 2016), cert. denied, 137 S. Ct.
1088 (2017).  The First Circuit then declined to review Boston's
interlocutory appeal in the present case, suggesting this Court
analyze the Officers' claims in light of the Lopez decision.
Smith II, 267 F. Supp. 3d at 328 (quoting ECF No. 229); see also
ECF Nos. 225, 235, 236, 241, 242, 245, 247, 250.  This Court did
so and reaffirmed its Smith I decision on July 26, 2017.  ECF
No. 245.

Afterwards, this Court held a three-day trial in order to
determine the damages suffered by the Officers as a consequence
of being delayed or denied promotions based on the
discriminatory exam.  ECF Nos. 296-98.  This Court entered
judgement granting back pay and interest to the Officers.  ECF
Nos. 306, 308.  The Officers, thereafter, filed their motion for
attorneys' fees and costs, that the parties have fully briefed.
Pls.' Pet.; Opp'n Pls.' Pet. Att'ys Fees & Costs ("Def.'s
Opp'n"), ECF No. 317.

## B. Lodestar Method for Calculating Attorney's Fees

Courts in the First Circuit follow the lodestar method to calculate reasonable attorneys' fees and award them to prevailing parties in litigation.  Tennessee Gas Pipeline Co. v. 104 Acres of Land, 32 F.3d 632, 634 (1st Cir. 1994).  According to this method, the court multiples "the number of hours productively spent by a reasonable hourly rate to calculate a base figure."  Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  The Officers bear the burden to demonstrate that the requested number of hours expended by the attorneys are reasonable, and the court must exclude those hours that are "excessive, redundant, or otherwise unnecessary."  Hensley, 461 U.S. at 434.  Afterwards, the Court must determine the hourly fee which must equate to the "prevailing rates in the community" for lawyers of like "qualifications, experience, and specialized competence."  Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001).

## II.  ANALYSIS

The parties do not dispute that the Officers prevailed in this litigation.  Pursuant to Title VII of the Civil Rights Act and Massachusetts General Laws Chapter 151B, the Court in its discretion awards "reasonable attorney's fee (including expert fees)" and reasonable costs to the prevailing party.  42 U.S.C.

§ 2000e-5(k); Mass. Gen. Laws. ch. 151B, § 9; Fontanillas-Lopez

v. Morell Bauza Cartagena & Dapena, LLC, 832 F.3d 50, 59 (1st

Cir. 2016).

Boston is requesting a significant reduction of the

Officers' claim for attorneys' fees and costs.  Def.'s Opp'n 1.

In particular, Boston asserts that the Officers are not entitled

to any fees and costs associated with the litigation of the

Lopez case, id. at 4, that fees should be reduced for

unsuccessfully litigated issues such as the 2005 exam and the

class action certification attempts, id. at 8-12, and that the

Officers did not cause Boston to decide to move away from the

multiple choice exam in 2014, id. at 13.  Additionally, Boston

asserts that the Officers' attorneys engaged in improper block

billing or billing with vague, generic entries that are not

decipherable, id. at 15-17, failed to provide contemporaneous

records, id. at 17-18, overstaffed the damages trial, id. at 19-

20, and that the rates charged do not reflect the prevalent

attorneys' fees for the different points in time of a lengthy

matter that began back in 2012, id. at 21-22.  The Officers'

attorneys assert that the Lopez litigation was a necessary

predicate for this litigation and that all hours and fees are

reasonable and supported by the record.  See generally Pls.'

Reply.

## A. Fees and Costs Associated with the _Lopez_ Litigation

The Officers requested an award of fees and costs from the _Lopez_ case totaling $977,951.  Pls.' Pet. 5.  Their reasoning is that "the entire transcript and exhibits were introduced by agreement of both parties . . . and both parties and the court relied on much of that trial record in this case."  Id. at 4-5.

Title VII of the Civil Rights Act and Chapter 151B of Massachusetts General Laws authorize recovery of attorney's fees and costs only to the prevailing party.  McDonough v. City of Quincy, 353 F. Supp. 2d 179, 183 (D. Mass. 2005).  There is no doubt that _Lopez_ rejected a similar claim challenging Boston's 2008 sergeants' promotional exam, so the defendants -- not the plaintiffs -- were the prevailing parties.[2]  _Lopez_, 823 F.3d at 122 (affirming "the district court's order finding that the

---

[2] Boston also asserts that it is improper to recover any money from the litigation in _Lopez_, since such proceedings were not necessary to the outcome of this case.  Def.'s Opp'n 8. Boston's argument is meritorious.  Any reliance of this Court on the _Lopez_ record was not "necessary to advance the civil rights litigation."  Webb v. County Bd. of Educ., 471 U.S. 234, 243 (1985).  Only fees incurred in ancillary proceedings "necessary" to a related action are recoverable.  Bogan v. City of Boston, 489 F.3d 417, 427 (1st Cir. 2007).  Although the Officers attempted to identify those portions from the _Lopez_ record to which this Court referred in its order, such attempt shows merely that the _Lopez_ record -- in the words of the Officers -- "helped form the basis of this Court's rulings in Plaintiff's favor,"  Pls.' Pet.  22, but this was because there was "some factual overlap" between the two cases, Smith I, 144 F. Supp. at 185, not because such information was necessary to this Court's determinations.

exams Boston used in 2005 and 2008 did not violate Title VII"
and also affirming "the entry of judgment in favor of all
defendants."). This Court shares the Sixth Circuit's concern
about the "idea of ever permitting plaintiffs' counsel to
receive fees for work performed in a completely separate case.
Doing so could lead to all sorts of oddities, as illustrated by
this case where counsel would be permitted to recover fees for
thousands of hours of time spent litigating a case they lost."
Binta B. v. Gordon, 710 F.3d 608, 631 (6th Cir. 2013) (emphasis
in original).

       All attorney's fees and costs associated with the Lopez
litigation are, therefore, disallowed.

       **B. Lodestar Approach**

       The Officers consider the 1,880.9 hours spent in litigating
two trials (liability and damages stages) and a remand from the
First Circuit (to consider its decision in the Lopez case) to be
reasonable. Pls.' Pet. 8. It is without doubt that this case
was properly and vigorously litigated by the parties, but this
Court must adjust the requested number of hours to account for
limited success in certain claims, as well as for the improper
billing methods. Hensley, 461 U.S. at 434.

       **1.   Reduction for Limited Success**

       The courts may discount for work performed in service of
unsuccessful plaintiffs or claims when they diverged from the

[7]

successful core facts and theory.  Cf. System Mgmt., Inc. v.
Loiselle, 154 F. Supp. 2d 195, 209-10 (D. Mass. 2001); Dixon v.
International Bhd. of Police Officers, 434 F. Supp. 2d 73, 83-84
(D. Mass. 2006).

The complaint challenging the 2005 and 2008 lieutenants'
exams included Joseph Tinker and John Johnson among the
plaintiffs.  Compl. ¶¶ 1, 5-6, 13, 19, ECF No. 1.  The Officers
did not prevail on their claims.  ECF No. 28.  This Court,
therefore, reduces by 20% the time logged by each attorney up
until July 24, 2013.  Id.  Likewise, this Court reduces the time
logged by 20% for unsuccessful claims from that date to December
16, 2014, when this Court ruled that there were no legitimate
claims as to the 2005 exam.  See ECF No. 150.  The Officers also
attempted to certify a class on October 18, 2013 which was
denied on March 25, 2014; they later renewed their motion to
certify the class on May 22, 2019 which was again denied on June
13, 2019.  See ECF Nos. 47, 70, 255, 264.  This Court reduces,
by 10%, the time logged prior to the first denial (using the
July 25, 2013 date as an approximate start), and by 10% between
the denial of claims on December 16, 2014 and the second class
certification denial.[3]  Table 1 describes each of these

---

[3] Although the Officers' attorneys indicate that they only
spent 92.9 hours in tasks related to class certification, the
manner in which they logged their hours ("call," "email,"
"prepare for hearing") does not allow this Court completely to

reductions.  The final total is the sum of the highlighted rows, consisting of the hours logged for each period of time after applying any reductions.

| Table 1 | | | | |
|---|---|---|---|---|
| | Attorney Harold Lichten | Attorney Stephen Churchill[4] | Attorney Benjamin Weber | Attorney Zach Rubin[5] |
| Total Hours Logged | 662.9[6] | 224.4 | 780.6[7] | 195.7 |
| Time logged up to July 24, 2013 | 14.8 | 0 | 12.7 | 0 |
| After 20% reduction for dismissed plaintiffs | 11.84 | 0 | 10.16 | 0 |
| Time logged between July 25, 2013 and March 25, 2014 | 26.7 | 7.6 | 79.2 | 0 |

---

discern that no other time was spent on issues related to class certification.  See Pls.' Reply 10 n.10; Pls.' Pet., Ex. B, Aff. Stephen Churchill ("Churchill Aff."), ECF No. 309-2.  The Court, therefore, applies a 10% global reduction.

[4] Aff. Churchill 35-37.

[5] Attorney Zach Rubin's logged hours start on May 24, 2019 and therefore is only affected by the renewed class certification reduction.  Pls.' Pet., Ex. A, Aff. Harold Lichten ("Lichten Aff.") 12-18, ECF No. 309-2.

[6] Lichten Aff. ¶ 17, 17 n. 2.

[7] According to the Lichten Affidavit, Attorney Weber logged 716.6 hours from May 2013 until January 2018, then he logged 60.02 from April 2019 to the present.  See Lichten Aff. ¶ 7. This Court reexamined the provided numbers and found that he should in fact be credited for 64.02 hours from April 2019 to the present.  Id. at 46.

| After 30% reduction for unsuccessful claim and first denial of class certification | 18.69 | 5.32 | 55.44 | 0 |
|---|---|---|---|---|
| Time logged between March 26, 2014 and December 16, 2014 | 129.7 | 93.2 | 219.4 | 0 |
| After Remaining 20% reduction for unsuccessful claim | 103.76 | 74.56 | 175.52 | 0 |
| Time Logged between December 17, 2014 and June 13, 2019 | 354.7[8] | 96.3 | 414.24 | 33.15 |
| After 10% reduction for second failed attempt at class certification | 319.23 | 86.67 | 372.81 | 29.84 |
| Time logged from June 14 | 0 | 27.3 | 55.08 | 162.55 |

---

[8] Attorney Lichten logged 388.9 hours from February 6, 2012 until May 28, 2015. Lichton Aff. ¶ 17 n. 2. Lichten "stopped keeping contemporaneous logs of [his] time toward the middle of 2015," and estimated, therefore, that from May 28, 2015 to the present he spent 274 hours working on this litigation. Id. This Court reduces by 50% that estimated amount of time for lack of contemporaneous billing. Davignon v. Clemmey, 176 F. Supp. 2d 77, 96 (D. Mass. 2001). This hour calculation of 354.7 is, therefore, the sum of the 217.7 documented hours between December 16, 2014 and May 28, 2015, and the 137 hours (half of the estimated 274 hours) for the remainder of the time period. Additionally, as the records do not indicate which hours were worked before and after June 2019, the 10% reduction is applied to all of these hours.

| 2019 to present | | | | |
|---|---|---|---|---|
| **Total** (total reduced time + time logged to the present) | **453.52** | **193.85** | **669.0** | **192.39** |

### 2.   Unreasonable Hours

The burden of proof regarding the reasonableness of the fees requested relies on the movant party.  Hensley, 461 U.S. at 434.  The court may reduce the number of hours billed if the hours are inadequately documented.  Conservation Law Found., Inc. v. Patrick, 767 F. Supp. 2d 244, 251 (D. Mass. 2011). "[T]he absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984).  When a firm uses a billing method that does not itemize the time expended on specific tasks, instead of deciphering the billed tasks, the court can apply a global reduction of the overall time billed for each attorney.  See Conservation Law Found., Inc., 767 F. Supp. 2d at 253; See also Walsh v. Boston Univ., 661 F. Supp. 2d 91, 106 (D. Mass. 2009) (Bowler, M.J.) ("a court 'may either discount or disallow' hours where time records are 'too generic and, thus, insufficient as a practical matter to permit a court to answer questions about

excessiveness, redundancy and the like'" (internal quotations
omitted)).

     The attorneys for the Officers logged some entries "without
explaining the nature or subject matter of the task," id., and
instead, referred to very generic tasks such as "email to [. .
.]," "work on brief," "research," or "call with [. . .]." See
generally Lichten Aff.  12-105; Churchill Aff. 35-42.   Unlike
the Volkswagen & Audi Warranty Extension Litigation decision
that the Officers' attorneys cite, here the block-billing was
not infrequent or relatively minor.  Pls.' Reply 13 (citing 89
F. Supp. 3d 155, 176 (D. Mass. 2015)).  A more precise
description of the topic researched or discussed, or a reference
as to what documents were being reviewed would allow a court to
determine whether the time spent during the litigation was
reasonable.  Because the type of time records submitted are
"insufficient" to allow this Court to determine whether they are
reasonable, this Court will apply a 20% global reduction of the
overall time billed for each attorney.  See Walsh, 661 F. Supp.
2d at 106; Conservation Law Found., Inc., 767 F. Supp. 2d at
253.  This Court is content that these reductions will also
account for any overstaffing of the litigation team at the
damages trial.

     From the already reduced hours, this Court applies a 20%
global reduction, as detailed on Table 2 below:

| Table 2 | | | | |
|---|---|---|---|---|
| | Attorney Harold Lichten | Attorney Stephen Churchill | Attorney Benjamin Weber | Attorney Zach Rubin |
| Reduced hours (from Table 1) | 453.52 | 193.85 | 669.0 | 192.39 |
| After 20% reduction for insufficient records | 362.816 | 155.08 | 535.2 | 153.912 |

### 3.  Reasonable Fees

After determining the number of hours reasonably expended, the following step in calculating the lodestar requires the court to determine a reasonable hourly rate which is "benchmarked to the 'prevailing rates in the community' for lawyers of like 'qualifications, experience, and specialized competence.'" <u>Shea</u> v. <u>Porter</u>, Civ. A. No. 08-12148, 2015 U.S. Dist. LEXIS 141134, at *14 (D. Mass. Oct. 16, 2015) (Saylor, J.) (quoting <u>Gay Officers League</u>, 247 F.3d at 295); <u>Grendel's Den</u>, 749 F.2d at 955 ("'Reasonable fees' under [Section] 1988 are to be calculated according to the prevailing market rates in the relevant community.").

This case developed in Boston, and the Officers' attorneys presented evidence that allows this Court to find that although the requested fees were not "unduly high" they must be adjusted so that they "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill,

[13]

experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  It is difficult to heavily rely -- as Boston does in its brief, see Def.'s Opp'n 22 -- on what other courts have awarded.  Cf. Riley v. Massachusetts Dep't of State Police, Civ. A. No. 15-14137, 2019 U.S. Dist. LEXIS 174182, at *4 (D. Mass. Oct. 8, 2019) (Casper, J.).  Although such information is illustrative, it does not account for the facts that rates are intrinsically related to the complexities of each case, and the factual support other courts used to reach the awarded fee.  Id. This Court has analyzed the precedent and affidavits provided by the parties,[9] and finds that the following hourly rate award is reasonable:

| Table 3 | | | | |
|---|---|---|---|---|
| | Attorney Harold Lichten | Attorney Stephen Churchill | Attorney Benjamin Weber | Attorney Zach Rubin |
| Initial fee requested | $700 | $600 | $450 | $350 |
| Fee awarded[10] | $700 | $600 | $400 | $300 |

---

[9] The Officers' attorneys cite to one non-class action First Circuit decision -- Riley -- which awarded a maximum of $600 per hour for an attorney of similar skills to Lichten and Churchill. Pls.' Pet. 15.

[10] See Rhode Island Med. Soc'y v. Whitehouse, 323 F. Supp. 2d 283, 292 (D.R.I. 2004) ("In ascertaining the rates to be awarded, the district court need not rely on information supplied by the parties, and remains free to utilize its own knowledge of attorneys' fees in the relevant area.")

This Court rules that Boston's argument regarding differentiated fee from work done before 2016 is meritless.  See Def.'s Opp'n 22.

> [C]ompensation received several years after the services were rendered -- as it frequently is in complex civil rights litigation -- is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings.  We agree, therefore, that an appropriate adjustment for delay in payment -- whether by the application of current rather than historic hourly rates or otherwise -- is within the contemplation of the statute.

Missouri v. Jenkins, 491 U.S. 274, 283-84 (1989).  Awarding the current rate will account for inflation and the Officers attorneys' entitlement to their fees contingent on their success.  Ferraro v. Kelley, Civ. A. No. 08-11065, 2011 U.S. Dist. LEXIS 81443, at *19 (D. Mass. Feb. 8, 2011) (Woodlock, J.) (recognizing that billing rates increase as time passes as a result of inflation and individual experience)

Per the above determinations, the Officers' attorneys are entitled to recover attorneys' fees in the amount of **$607,272.80.**  Table 4 below details this finding per attorney:

| Table 4 | | | | |
|---|---|---|---|---|
| | Attorney Harold Lichten | Attorney Stephen Churchill | Attorney Benjamin Weber | Attorney Zach Rubin |
| Recognized Hours | 362.816 | 155.08 | 535.2 | 153.912 |
| Hourly Fee Award | $700 | $600 | $400 | $300 |
| Total | $253,971.20 | $93,048.00 | $214,080 | $46,173.60 |

## C. Costs

Expenses that attorneys customarily bill to their clients are recoverable by a successful civil rights plaintiff.  See Fed. R. Civ. P. 54(d)(1); Poy v. Boutselis, 352 F.3d 479, 490 (1st Cir. 2003); Wilcox v. Stratton Lumber, 921 F. Supp. 837, 850 (D. Me. 1996) (noting that costs are "out-of-pocket expenses of the type an attorney would normally pass on to a client."). These expenses include litigation costs (court costs, deposition fees, copying), as well as expert witnesses fees.  42 U.S.C. § 2000e-5(k).  The requirement of detailed tasks performed, dates and number of hours spent on each task applies, as well, to expert witnesses.  Id.

> In determining what expenses should be awarded, a court must apply a test of reasonableness and necessity.  It is well-established in awarding fees in a civil rights case that certain out-of-pocket costs incurred by the plaintiffs' attorneys, including transportation, lodging, parking, food and telephone expenses can be reimbursed as reasonable and necessary costs and expenses.

Rhode Island Med. Soc'y, 323 F. Supp. 2d at 317 (internal quotation marks removed) (quoting In re Boston & Maine Corp. v. Moore, 776 F.2d 2, 11 (1st Cir. 1985)).

As explained above, this Court does not award the requested costs of $316,781 in expert fees related to the Lopez litigation.  See supra II.C.  Boston does not dispute the

requested $346,372 in costs related to this litigation, and this Court finds these costs to be reasonable and well supported by the record.

## III. CONCLUSION

Attorneys' fees and costs, ECF No. 309, are GRANTED in the amount of **$953,644.80** as detailed herein.


**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE